Commonwealth ex rel. Colligan, Appellant, *v.* Kass, Appellant.

Argued June 12, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Jack A. Rounick,* with him *Moss, Rounick & Hurowitz,* for relatrix.

*Marvin Comisky,* with him *Alan C. Gershenson,* and *Blank, Rome, Klaus & Comisky,* for defendant.

OPINION BY WATKINS, J., April 12, 1973:

These are cross appeals from orders of the Court of Common Pleas of Montgomery County involving the support, maintenance and education of Marcia, Jamie and Jeffrey Kass, the children of Jerome D. Kass and Lita Kass Colligan. The mother appeals from the order affecting Marcia and Jamie; and the father appeals from the order affecting Jeffrey. Marcia was born on July 31, 1949, Jamie on July 31, 1951, and Jeffrey on July 12, 1953.

The real question involved in these appeals is the obligation of the husband under an agreement executed on July 28, 1961, at the time of a property settlement in contemplation of divorce, obligating himself to the support and education for the children which agreement was to continue until each child died, became emancipated, or self-supporting or attained the age of twenty-one (21) years. The pertinent provision, inter alia, reads as follows: "The obligation of the husband to pay for the support, maintenance and education of his children as aforesaid shall continue . . . under the terms of this agreement, shall terminate as to each child as and when such child attains the age of twenty-one (21) years." The agreement in question was not introduced into evidence, but is discussed and considered in counsels' briefs and in the court's opinion.

On April 19, 1967, the wife filed a petition seeking an order for the support of the three children. Without testimony, and by agreement of counsel in open court, an agreement was entered in the amount of $142.50 per week. On August 25, 1969, the wife filed a petition to increase the order on the ground of changed circumstances based on the increased needs of the children for college education. On November 20, 1969, the father filed a petition to modify and remit arrearages based on the fact that the children had reached age eighteen (18). All petitions were joined and a number of hearings held. On October 8, 1970, the court reduced the order temporarily to $100.00 per week for the support of Jeffrey and Jamie. This removed Marcia from the order. On April 7, 1971, another temporary order was entered directing the father to continue to pay $100.00 a week on account of Jeffrey and accrued arrearages. It deleted Jamie from the order. On July 21, 1971, a final order, the subject of these appeals, was entered. It reads as follows:

"AND Now, July 21, 1971 it is hereby Ordered and Decreed that support under our existing Order dated April 7, 1971 shall continue until August 15, 1971 at which time it shall terminate and in lieu thereof defendant Jerome D. Kass is directed to make payments for the college education of his son Jeffrey Kass as follows: (a) initial payment of $3932.00 due August 15, 1971 for tuition, room and board and miscellaneous expenses; and (b) thereafter recurring expenses for the next three years of $3807.00 due on August 15 of each succeeding year. This Court is to retain jurisdiction over such expenses and in case of increase or decrease shall modify this Order upon Petition.

"It is further Ordered that the existing arrearage of record amounting to $8402.90 be credited as follows: (a) stipulated credit of $5102.14 for the support and

maintenance of Jamie and Marcia; and (b) 18½ weeks (April 7, 1971 until August 15, 1971) of $50 per week payments towards arrearages based on our Order of April 7, 1971 which removed Jamie from all support (Marcia having been removed by Order dated October 8, 1970) totaling $925.00. The remaining arrearages of $2375.76 is to be paid by August 15, 1971."

At the outset we are unable to understand why the father of three children was given any consideration in the face of the arrearages due when in direct violation of the order of the court he arbitrarily reduced the order. This is especially true when there was no financial burden of any kind involved. The arrearages should have been paid in full before hearing on his petition proceeded. The statement by the court below: "It is abhorrent to the conscience of this Court that the defendant should be required to underwrite and finance this young woman's abysmal academic charade so infamously shrouded in immorality and lawlessness. It is not only that her scholastic abilities and performance are inadequate; her deportment and conduct likewise serve to forfeit her entitlement to a college education at her father's expense," does not impress this Court. It is doubtful if the testimony of the father concerning sexual misconduct and general misconduct, most of which was hearsay, in the absence of the daughter who was deprived of the opportunity to face her accuser, was properly admitted.

The fact that she did poorly in college in her first year is certainly not unusual nor does it indicate that she did not have the motivation or ability to pursue higher education. Many freshmen at college, for various reasons, do poorly, then "shape up" after the first year, and become good students. The respective colleges of the girls, McGill University and Carlton University, are both outstanding institutions of learning

and most certainly courts should not take over the responsibility of the college authorities and establish arbitrary standards of admission that have to be matched in order for the student to be found "able and willing" to graduate from a course of study at an institution of higher learning.

The fact that both girls did enter school and the school accepted them as students is sufficient to establish that they are willing and able under the test established in *Commonwealth ex rel. Ulmer v. Sommerville*, 200 Pa. Superior Ct. 640, 190 A. 2d 182 (1963). Marcia has just graduated with honors from McGill University; Jamie has finished her third year at Carlton University with 3 A's and 3 B's.

The father admits to a net worth of over $250,000.00. Thus, the question is the girls' ability and willingness to pass a college course of study. In the absence of an agreement, this might pose a question. However, since the father agreed to pay for the education of his children until they reached twenty-one (21) years of age, and since both girls were able to continue at their respective colleges, we hold that the father is bound by the terms of the agreement and must provide for their education until they reach the age of twenty-one (21). *Commonwealth ex rel. Smith v. Smith*, 217 Pa. Superior Ct. 1, 268 A. 2d 161 (1970). The father is responsible for this support solely in the terms of the property settlement agreement which was not replaced by the court order of April 19, 1967. We find that the court order of April 19, 1967, merely modified the terms of the original agreement and did not supersede it. Thus, the defendant is responsible for all the college expense of his daughters which he has failed to pay until they reach the age of twenty-one (21).

With regard to the defendant's son, Jeffrey, we hold that the father is also responsible for his education un-

der the property settlement agreement until he reaches the age of twenty-one (21). Although the father disapproved of the boy's choice of schools, it appears that Jeffrey did consult with his father as to the choice of schools and that there were several medical reasons for the boy deciding to attend a college in a dry climate. It also appears that the quality of education offered at both the father's choice and the son's choice of schools is comparable. Thus, the father must provide for the education of Jeffrey until he reaches the age of twenty-one (21). Since the court below determined that Jeffrey was willing and able to pursue a college course of study and since the father was found to be financially able to provide for such, we hold that the court did have the authority to require the father to provide for the full four years of Jeffrey's educational expenses. *Commonwealth ex rel. Ulmer v. Sommerville*, supra. Thus, the order of the court below with regard to Jeffrey is affirmed.

The order of the court below is affirmed with regard to Jeffrey and reversed with regard to Marcia and Jamie. We attempted to mathematically fix the outstanding arrearages, but were unable to do so because of a complicated and confusing record. We direct that the arrearages be paid in full and remand the case to the court below for computation.