555 A.2d 1294

**Patsy I. MAURER, Appellant,**

v.

**Raymond MAURER.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1988.

Filed Jan. 30, 1989.

Petition for Allowance of Appeal Denied June 19, 1989.

470

Bruce F. Bratton, Harrisburg, for appellant.

Jeffrey E. Piccola, Harrisburg, for appellee.

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

TAMILIA, Judge:

Appellant/mother and appellee/father are the parents of a 19 year old son, Troy, who graduated from high school in the spring of 1987. At that time, appellee was paying $75 per week for Troy's support and $15 per week for appellant's support. On June 24, 1987, appellee petitioned the court to terminate the support Order as to Troy, alleging he

was 18 years old, had graduated from high school and enlisted in the army. The support Order was modified by the domestic relations office which reduced appellee's support obligation to Troy to $50 per week. Both parties appealed to the domestic relations court which entered an Order on October 20, 1987 terminating Troy's support, finding him emancipated and capable of supporting himself. That portion of the Order granting appellee/mother support in the amount of $15 per week was unappealed.

The facts are not in dispute. Troy was scheduled for induction in the United States Army in June, 1987, but developed appendicitis and was released from his commitment. Prior to June, 1987, Troy was employed at a service garage and after the army released him, he enrolled in the Automotive Techniques and Management School (ATMS) at the National Education Center. The school provides a 15–month program of vocational training in automobiles and prepares students to set up their own small businesses. The cost of the program is $15,000 and Troy and appellant were approved for $4,700 in loans and grants.

The trial court found appellee has no duty to support Troy because he is not attending a college where he will obtain a bachelor's degree and also because Troy has the ability to support himself, as evidenced by his induction in the army and his employment at the service station. Appellant appeals from this Order claiming appellee is obligated to provide support for his son even though the school he is attending is not a four-year college.

The trial court relied on *Brown v. Brown*, 327 Pa.Super. 51, 474 A.2d 1168 (1984), in finding "college" meant undergraduate study leading to a bachelor's degree, therefore, Troy was not entitled to support from appellee for his training at the ATMS. In *Brown*, however, we were reviewing the question of whether a parent was obligated to support a child who already had an undergraduate degree and was attending law school. In our decision we stated children are entitled to support for "college" under certain circumstances and in distinguishing college from law school

or any other post-graduate school, we used the definition for college which other states have propounded, namely, "college" means undergraduate study leading to a bachelor's degree. Subsequent decisions reaffirmed this Court's intent to limit *Brown* to holding a child is not entitled to support for *post-graduate* education.

> *Brown* does not limit the types of post-secondary education for which a parent may be compelled to provide support. Our cases do not stand for the proposition that a parent's obligation to provide education expenses is dependent on whether the child attends college or a commercial art school. Rather, the determination is to be made on the basis of whether the child possesses the aptitude and the desire to successfully complete the course of studies the school provides. (Citations omitted.)

*Kopp v. Turley*, 359 Pa.Super. 106, 108–09, 518 A.2d 588, 590 (1986).

Thus a parent may be responsible for helping a child financially through post-secondary schooling, whether it is college or vocational school, if the child has the ability and desire to successfully complete the course of studies. This is not an automatic obligation, however, as the parent from whom support is sought must have sufficient means to pay the support Order without undue hardship. *Leonard v. Leonard*, 353 Pa.Super. 604, 510 A.2d 827 (1986). In *Leonard*, we listed several factors the trial court must consider in determining a parent's ability to pay support for a child.

> It is well established in evaluating a parent's support obligation the lower courts should consider the parent's income (or potential earning power if there is a disparity between that figure and actual income) and the full nature and extent of the parent's property interests and financial resources. The parent's stock holdings, and other investments, at their market value, are among the factors the lower court should consider. Quite naturally, the court should consider a parent's income, from whatever source; included in income should be monies received from the rental of real estate, but that "income" must

reflect actual available financial resources and not the oft time fictional financial picture which develops as the result of depreciation deductions taken against rental income as permitted by the federal income tax law. Otherwise put, "cash flow" ought to be considered and not federally taxed income. The court must also consider the parent's interest in jointly held assets, but it may not consider the entire value of joint property as the parent's.

*Id.*, 353 Pa.Superior Ct. at 610, 510 A.2d at 830 (citations omitted).

 The trial court did not reach the issue of appellee's ability to pay as, in addition to its erroneous reliance on *Brown, supra,* it found Troy has shown the ability to support himself. We cannot agree that a child should be denied support for post-secondary education because he showed enough initiative to obtain employment while in high school or prior to entering his chosen course of study; nor do we agree with appellee that he should not be ordered to contribute to the cost of Troy attending ATMS since Troy does not require further education to become employable. Under this reasoning, few children would have any claim on their parents for aid in furthering their advanced education in a time when jobs in fast food and other service areas go begging.

 While it may be true further education is not "necessary" for a student who has a high school diploma, is employable and/or has worked prior to graduation, we have never held that a child should not be assisted by his parents financially to attend post-secondary school because the child could get a minimum wage job and be productive. This earning ability is a consideration as to the need of the child for parental assistance in pursuing advanced training, to the degree he can do both, but it does not eliminate parental support. A child should be encouraged to further his education and if he has the ability, aptitude and desire to attend and successfully complete a chosen program, his parents have a responsibility, within the limits of their respective incomes, to assist him.

474

The family structure is the major unit of our society from which flows the culture, educational energy, direction and generational progression of our scholastic attainment. We are in serious competition with the rest of the world to maintain our leadership in educating our children. Because we have the highest divorce rate in the world and a serious problem of single parent families, which mitigate against children receiving the fullest measure of care and education, we stand to fall behind. Only through an enlightened legislative and judicial policy of assuring fairness and protection to the child victimized by family breakup, can we lessen the impact on the child and society of aborted educational pursuits.

A child in an intact family is usually encouraged by his parents to achieve the highest educational pursuits possible within family resources and usually with some sacrifice on the part of the parents. In a family racked by divorce, one parent, usually the mother, continues to support those aspirations, whereas the absent parent frequently seeks to shed those responsibilities even when sufficient means are available. This places the child of divorce in a doubly disadvantaged position in that he lacks the nurturing of an intact family and the loss of expectation for fulfillment of his intellectual and scholastic potential. Neither the child nor society can afford this.

In this case, the trial court buttressed his finding that the child was not entitled to support while seeking advanced training as he was emancipated. Emancipation, within the context of the law as it applies to minors, has only limited application in this or other cases involving support of children seeking advanced education from parents who have been separated or divorced.

In a limited way, this Court recently considered in an en banc review, the concept of emancipation as it applied to a minor who had become a mother, but then desired to return to college to complete her education. There, the child, Christine, graduated from high school in 1984, attended the University of Rochester during the fall of 1984, gave

birth to a child in the spring of 1985, attended Lehigh University in the fall of 1985, was employed during the winter, spring and summer of 1986, and attended Maine Institute of Art during the fall of 1986 and spring of 1987. She remained in the family home with the mother. *Griffin v. Griffin*, ___ Pa.Super. ___, 558 A.2d 75 filed (1989). The father argued the child was emancipated because she was twenty-one years of age and herself a mother of a child. The Court in *Griffin* was not inclined to find emancipation or adopt a distinction between a child who reached twenty-one and achieved motherhood from one who had not.

After careful analysis of the term and concept of emancipation, once the other requirements are met permitting a child to pursue advanced training, the criterion that is applicable in a support/educational situation *is whether the child is dependent upon his parents for support or is independent of such needs.* The Domestic Relations Code, 23 Pa.C.S. § 4323 Support of emancipated child, provides:

(a) Emancipated child.—A court shall not order either or both parents to pay for the support of a child if the child is emancipated.

Emancipation is a question of fact to be determined by the circumstances presented in each case. For purposes of this case and support matters generally, dependency is the criterion and is less restrictive than the standards applied for purposes of receiving public assistance. *See* Public Assistance Manual, 55 Pa.Code § 145.62 Definitions, Emancipated minor. In that context, minors of 16 and over, not living with the parents or under the parents' control, or minors, married, whether or not living with the parents, are considered emancipated and, therefore, eligible for General Assistance. An unemancipated minor is eligible for Aid to Families of Dependent Children. Thus it is evident that the definition and concept as to emancipation in the context of children in need of public assistance is not relevant or applicable to those children who can be supported by their parents. In Public Welfare context, it becomes a procedur-

al and substantive means by which public aid is distributed as a state rather than federal responsibility.

Clark's work on Domestic Relations summarizes the law of emancipation and its various applications in English and American Common Law.

> Emancipation, the legal process by which a child is released from the control and authority of his parent, was a Roman law institution.... [T]he earliest cases ... arose out of the father's claim to the services and earnings of his son, a claim which he was normally entitled to assert at common law ... if the father had failed or refused to support the child, courts were reluctant to let the father recover the child's earnings from an employer, since the father's right to his child's services was usually considered to be a correlative of the father's duty to support the child. Somewhat later the cases began characterizing the circumstances in which the father's claim to the child's earnings was rejected as constituting emancipation.

> . . . . .

> [In modern times] [e]mancipation as a legal term is useful, but only as a means of describing a result already reached, not as an analytical tool.... A particular disability [of minority] should no longer exist whenever the child's circumstances have so changed that the reason for creating the disability no longer exists. This requires separate treatment for each sort of disability, ... [by] reliance upon ... the theory of partial emancipation.... Courts are beginning to adopt it in decisions which expressly hold that emancipation has occurred for some purposes but not for others....

> . . . . .

> The child is given the right to be supported by his parents because he is unable to support himself and because human progress requires that there be a relatively long period of education and training for the young, during which they cannot be productive citizens. If the child's situation is such that he no longer needs to be supported,

then his right to that support should no longer exist. We normally, though not always, find that this right ends at majority, but it could end earlier. Since the issue of the right to support arises in many ways, there are situations in which a child who would be considered "emancipated" for other purposes would not be entitled to support and others in which he would be so entitled.

H.H. Clark, Jr., The Law of Domestic Relations in the United States (2nd Edition 1987), pp. 323–326.

■■■■ With this frame of reference and as applied to established case law in Pennsylvania, it becomes clear that emancipation may not arise by abandonment of the child by his father, or by the mere capacity of the child to get into the service or to become self-supporting. Granted, where a child has attained majority, has no disabilities and neither desires nor has the capability of attending a course of advanced training to reasonably prepare him for self-sufficiency, continued support is not in order. However, where as here the child has sincere and reasonable intentions for acquiring additional training, the law is abundantly clear that the parents have some obligations to provide assistance to him. For this purpose, he is *not* emancipated and the parents' obligation is a continuing one as outlined and delineated in the cases and discussion above. It is also true that a child may move in and out of emancipation and the mere fact he at one time qualified as an emancipated minor, does not foreclose the divestiture of emancipation when circumstances change.

For the above reasons, we hold that the trial court abused its discretion in finding that the child was emancipated and, therefore, no longer entitled to his father's assistance while he attended ATMS. It remains, however, to be determined the needs of the child and the ability of the father to pay, without there being an undue hardship on him.

We, therefore, vacate that portion of the Order of the trial court denying child support and remand for a hearing to evaluate appellee's support obligation for the child and for entry of an Order consistent with this Opinion.