563 A.2d 102

**Ruth BEDFORD**

**v.**

**Robert BEDFORD, Appellant.**

Superior Court of Pennsylvania.

Argued June 7, 1989.

Filed Aug. 3, 1989.

Susan E. Grosh, Lancaster, for appellant.

Russell W. Stabler, Lancaster, for appellee.

Before CIRILLO, President Judge, and ROWLEY and MONTEMURO, JJ.

CIRILLO, President Judge:

This is an appeal from an order of support entered in the Court of Common Pleas of Lancaster County in response to appellant Robert Bedford's petition to modify his support obligation. We affirm in part and vacate in part.

Robert Bedford (hereinafter "father") and Ruth Bedford (hereinafter "mother") had two children during the course of their marriage: Michael and Robert, Jr. After the parties' divorce, a support obligation for these children, who were living with their mother, was placed upon their father. From time to time, the amount of father's obligation was modified because of a change in circumstance which the parties brought to the court's attention. As of November

17, 1987, father was obligated to pay the amount of eighty-five dollars per week (forty-two dollars and fifty cents each) for the support of Michael and Robert.

On April 11, 1988, father filed a petition for modification of his support obligation. In the petition, he requested a reduction in his support obligation on the ground that his son Michael was scheduled to graduate from high school on June 10, 1988. A conference on this petition was held between the parties and a domestic relations hearing officer. On June 29, 1988, the hearing officer filed a recommendation with the court suggesting that it continue father's support obligation of forty-two dollars a week for Robert, Jr., but that it terminate father's support obligation for Michael because he had turned eighteen and graduated from high school. Upon consideration of this recommendation, the trial court entered an order directing the parties to comply with the terms of the recommendation. *See* Pa.R. C.P. 1910.11(f).

On July 7, 1988, mother filed exceptions to the recommendation and requested a hearing before the court of common pleas. A de novo hearing [1] was then conducted by the trial court pursuant to Pa.R.C.P. 1910.11(i).[2] On August 15, 1988, the trial court entered an order raising father's support for Robert, Jr. from forty-two dollars and fifty cents a week to fifty-five dollars per week and continuing father's support for Michael in the amount of thirty dollars per week. Regarding father's support obligation toward Michael, the court stated: "There was no estrangement between Michael Bedford and [his father] and Michael Bedford was entitled to support and it would not be an undue hardship for [father] to provide support for Michael Bed-

1. Michael was absent from the de novo hearing because he was taking a placement examination at Penn State University which he was unable to reschedule.

2. Section (i) of Pa.R.C.P. 1910.11 states, in pertinent part:
   If ... an order is entered and a demand for a hearing before the court is filed, there shall be a hearing de novo before the court. Pa.R.C.P. 1910.11.

ford." [3]  Shortly after this order was entered, father filed this appeal.

On appeal, father claims that the trial court erred by ordering him to pay support for his son Michael's college expenses. He contends specifically that the trial court erred in the following respects:

(1) the trial court erred by failing to find that Michael's estrangement from his father relieves his father of his duty to pay support for Michael's college expenses; [4]

(2) the trial court erred by ordering father to pay support towards Michael's college expenses without considering the earning capacity of Michael and his mother;

(3) the trial court erred by not finding that Michael failed to make a good faith effort to minimize his college expenses by timely applying for scholarships, grants, and loans, and by not concluding that Michael should defer his acceptance into college until after he has timely applied for this aid; and

(4) the trial court erred by concluding that it would not be an undue hardship for father to provide support towards Michael's college expenses.

In addressing these claims of trial court error, we are mindful that our review of the trial court's support order is limited to a determination of whether the court abused its

3.  Michael was an honor student in high school.  In addition, he has an intelligence quotient of one hundred and seventy.  Father readily admits that Michael has the ability and willingness to pursue a college education.

4.  In father's "Statement of Questions Involved" section of his brief, he lists the following three issues:

1.  Was it error to find that Michael Bedford and [father] were not estranged so as to prohibit support for post-secondary education?
2.  Was it error to find that Michael Bedford had not renounced his relationship with his father ... so as to forfeit his right to support for post-secondary education?
3.  Was it error not to find that Michael Bedford never discussed his educational plans with [his father] before applying and enrolling in college?

All of these issues, however, raise the question of whether Michael's action or inaction toward his father relieves his father of the duty to pay support for Michael's college expenses.  We will, therefore, address these issues as one.

discretion in fashioning the award. *Leonard v. Leonard,* 353 Pa.Super. 604, 608, 510 A.2d 827, 829 (1986). An abuse of discretion is not "merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Fee v. Fee,* 344 Pa.Super. 276, 279, 496 A.2d 793, 794 (1985) (quoting *Boni v. Boni,* 302 Pa.Super. 102, 109, 448 A.2d 547, 550 (1982)). A finding of abuse is not lightly made and must rest upon a showing of clear and convincing evidence. *Shindel v. Leedom,* 350 Pa.Super. 274, 279, 504 A.2d 353, 356 (1986).

■ Father first argues that the trial court erred by not concluding that Michael is estranged from him and, further, that this estrangement bars Michael's right to recover support from him for his college expenses. He buttresses this claim by describing the minimal amount of contact that Michael has had with him since he separated from Michael's mother when Michael was four.

Mother counters this estrangement argument by asserting that it was father and not Michael who willfully terminated the father-son relationship by choosing not to continue to visit or communicate with his son. She urges this court to affirm the trial court's finding that there is no estrangement between Michael and his father which would affect Michael's right to receive support from his father for his college education.

We approach these contentions regarding the nature of the relationship between Michael and his father and its effect on father's duty to pay support for Michael's college education by noting that until recently only two factors were considered in determining whether to award educational support to an adult child. These two factors were: (1) the desire and ability of the child to successfully pursue post-secondary education; and (2) the ability of his or her parents to contribute to that effort without undue hardship.

*See Commonwealth ex rel. Ulmer v. Sommerville,* 200 Pa.Super. 640, 643, 190 A.2d 182, 184–85 (1963). By focusing exclusively on these two pragmatic factors, however, we found ourselves "champion[ing] the importance of post-secondary education over that of adult responsibility." *Milne v. Milne,* 383 Pa.Super. 177, 186, 556 A.2d 854, 859 (1989) (en banc). We corrected this situation in *Milne, supra,* by holding that estrangement between a child and his or her parent should also be considered a factor in determining whether to award educational support for an adult child. We stated:

> [W]e now make it clear that estrangement is one of the circumstances to be formally considered in deciding post-minority support cases. It should not necessarily be a complete defense to such an action, barring an award, nor even a dispositive factor, but it should be weighed in the equitable balance.

*Id.,* 383 Pa.Superior Ct. at 197, 556 A.2d at 865. Articulating the rationale which prompted us to reach this holding, we declared:

> By college age, children of divorced parents must be expected to begin to come to terms with the reality of their family's situation. They must begin to realize that their attitudes and actions are their individual responsibilities. Whatever their biases and resentments, while one can understand how they got that way, when they become adults it is no longer appropriate to allow them to stay that way without consequence. One of a parent's main duties in raising a child is to teach him that he must take responsibility for his actions. The time-honored way in which this is accomplished is to make certain that a child deals with the natural consequences that follow from whatever course of action was chosen. Consider the lesson we are teaching if we allow adult children to use the powers of the state to force a parent whom they have abused and rejected to contribute to their college education. This kind of message can hardly be con-

sidered one which is beneficial for the welfare of those children.

*Id.*, 383 Pa.Superior Ct. at 190–191, 556 A.2d at 861.

The support action at issue in *Milne* was initiated by Caleb Milne against his mother. We concluded therein that Caleb Milne's abusive behavior toward his mother and his willful estrangement from her was sufficient reason for us to refuse to order her to contribute towards his college expenses. Describing the factual scenario that led us to this decision, we stated:

Caleb Milne and his mother are estranged. It is undisputed that it was Caleb's unilateral choice to leave his mother's house. Caleb's testimony shows his feelings of justification in cutting off relations with his mother and his lack of desire to improve them. The record indicates that, while her attempts to stay in contact with him have not been successful, she has made some efforts to leave the door open for his approach, should he wish to do so.... Perhaps, the single most compelling piece of evidence in this case is Ms. Milne's testimony that her son "spat in my face and shoved me so that I fell over. He never spat but once. He did push me more than once. He struck me at least twice."

*Id.*, 383 Pa.Superior Ct. at 185, 556 A.2d at 859. Our decision not to award Caleb educational support from his mother, therefore, was based on our conclusion that Caleb unilaterally chose to reject and renounce his relationship with his mother.

In the present case, the situation is different. Unlike Caleb, Michael cannot be faulted for unilaterally renouncing his relationship with his father; one simply cannot renounce something which does not exist.

Michael and his father have not had a relationship to speak of since Michael was eleven years old [5] and his father

---

**5.** Mother testified that father stopped visiting Michael when Michael was seven; father testified that he continued to visit Michael until he was eleven. While we have chosen to utilize the age of eleven as the point in time when father's visits ended, it is inconsequential to our

stopped exercising his right of visitation.[6]  Father's reasons for discontinuing his visitation with Michael and his brother, Robert, Jr., are typical.  During his visits with them, Michael and Robert, Jr. continued to chide him regarding his actions toward their mother.  This behavior coupled with the children's negative attitude toward him made his visits with them intolerable.  As the years have passed and Michael has grown older, father has not made any effort to rekindle his relationship with his son.[7]

Father, then, is not holding the door open for Michael, hoping that he will walk through it.  This fact, however, does not relieve Michael of all responsibility for the distance which exists between his father and himself.

When a child is young and his or her parents get divorced, the child often becomes involved in the parents' disputes.  Because of this, the child's view of the parents often becomes colored.  One parent becomes the "good" person and the other parent becomes the "enemy."  As the child grows up, however, he must make an attempt to separate himself from his parents' battles and begin to value each parent for whoever he or she is.

Michael has not made any effort to initiate contact with his father.  Since he is now an adult asking his father for one of the benefits of their father-son relationship, this may

decision in this case whether father's visitation with Michael ended when Michael was seven or eleven.

**6.**  At the de novo hearing before the trial court, only mother and father testified regarding the relationship between father and Michael. Mother testified that she sent a letter to father sometime in 1987, informing him that Michael had won several awards in high school; she also sent him an invitation to Michael's graduation.  Father did not respond to either of these communications.

Father testified that he sent Michael a birthday card when Michael turned twelve and that Michael failed to contact father when he received it.  Father also testified that he telephoned Michael's mother when Michael was fifteen and asked to speak with him; Michael refused to come to the phone.  Mother denied that either of these events occurred.

**7.**  According to father's testimony, he feels unable to reach out to Michael because Michael has not ever made any attempt to show him that he had or has any feelings of love or affection toward him.

be the time for him to to make some attempt to establish that relationship with his father.[8] A parent is not, after all, simply another source of financial aid. *See Milne*, 383 Pa.Super. at 177, 556 A.2d at 854.

Consequently, we do not find that Michael is without fault for allowing the estrangement between himself and his father *to continue.* However, because Michael cannot be faulted for unilaterally *initiating* the estrangement, this does not provide a basis for denying Michael support from his father for his college education. *Accord Powell v. Conway*, 386 Pa.Super. 1, 562 A.2d 324 (1989) (where both father and daughter are responsible for any estrangement between them, case does not require consideration of daughter's interaction with father "to reach a just result"). To conclude otherwise would be to reward father for neglecting his son. This we firmly refuse to do. Estrangement between a parent and child will only relieve or lessen a parent's duty to pay support towards a child's college education when that parent has made a concerted and good faith effort to establish and develop a relationship with his or her child, and the child has unquestionably and willfully rejected the parent's outstretched hand. Clearly, that is not the situation in this case.

Father argues next that the trial court erred by ordering him to pay support towards Michael's college expenses without considering the earning capacity of Michael and his mother. This contention is meritless.

The trial court clearly considered the ability of Michael and his mother to contribute to Michael's college education

8. We strongly believe that children should discuss their post-secondary educational plans with their parents if they desire the parent to contribute toward that goal. *See Milne*, 383 Pa.Super. at 190, 200, 556 A.2d at 861, 866. In this case, however, we do not find Michael's failure to consult with his father fatal to his recovery. It is clear that Michael did not discuss his college plans with his father because of the estrangement which exists between them. Moreover, Michael has chosen to attend Penn State University over several other more prestigous schools because of the cost. Michael, therefore, took into consideration the limited ability of his parents to finance his education in choosing the college in which he is enrolled.

in determining whether father should also contribute towards that goal. During the de novo hearing, information was elicited from mother concerning her income and expenses as well as Michael's ability to contribute to his college expenses. In the trial court's opinion, the court noted its findings with regard to this information. The court specifically stated its determination that Michael is making a financial contribution toward his college education by working as a computer consultant on independent projects. The court also set forth mother's net weekly income and the outstanding debt upon which she is paying. Furthermore, it is obvious that in making the determination that father should pay support for Michael, the trial court contemplated mother's voluntary contribution to Michael's college education. The court stated: "[T]he court finds that Michael is entitled to support for his education, and there should be contribution from his father, as well as from his mother." We thus dismiss this allegation of trial court error as frivolous.

■ Father also contends that the trial court erred by not finding that Michael had failed to make a good faith effort to minimize his college expenses by timely applying for scholarships, grants, and loans, and by not concluding that Michael should defer his acceptance into college until after he has timely applied for such aid. We disagree.[9]

9. This court has made various statements regarding the court's responsibility to take into consideration the ability of an adult child to contribute to their education by applying for scholarships and financial aid. In *Commonwealth ex rel. Hanerkam v. Hanerkam,* 221 Pa.Super. 182, 289 A.2d 742 (1972), we stated:

The potential availability to students of loans, grants, or self-help by part-time or summer employment does not negate the duty of the parent but does merit cognizance thereof when a serious question of undue hardship is presented.

*Id.,* 221 Pa.Superior Ct. at 186, 289 A.2d 742. Later, in *Miller v. Miller,* 353 Pa.Super. 194, 509 A.2d 402 (1986), we announced:

It is well established that a parent who has sufficient assets and earning capacity to furnish support without undue hardship for a child's college education is charged with the duty to do so. It is concomitantly true that the independent resources of a college-age child may be considered in determining the child's needs for support. That is not to say that a child must always contribute as much

A review of the evidence in this case reveals that Michael did apply for financial aid through his college and that at the time of the hearing, he was still expecting to receive a federal grant of seven hundred and fifty dollars in conjunction with other educational loans. He did not, however, meet the deadline for applying for a scholarship through Penn State University. Nevertheless, given the circumstances of Michael's late application to Penn State University, we cannot fault him for failing to timely apply for a scholarship through that institution.

Michael initially applied for acceptance at two colleges in New York, one of them being the Rochester Institute of Technology [R.I.T.]. While he was accepted at R.I.T. and received a three thousand dollar scholarship from that institution, Michael made the decision in late spring when no other financial aid was forthcoming that he could not afford to attend school there. At that point in time, Michael applied for and received acceptance at the York campus of Penn State University. By then, however, he had missed the deadline for applying for a scholarship through Penn State University. We believe that under these facts, Michael made a good faith effort to enroll in a school which, with the help of his parents, he could afford to attend and to obtain those forms of aid for which he was eligible.

Father argues lastly that the trial court erred by concluding that it would not be an undue hardship for him to provide support towards Michael's college expenses. He claims that with a net monthly income of only $1,976.00 and monthly expenses totaling $2,232.00, he does not have income available with which to pay support towards his son's college expenses.

■ In Pennsylvania, a parent is not legally required to pay support for his or her adult child's college expenses if that parent is not financially able to do so. In *Common-*

as possible to the payment of his or her educational expenses. Clearly, if a parent can meet the support needs of a college-age child with ease, a court is free to impose a complete obligation.
*Id.*, 353 Pa.Superior Ct. at 198, 509 A.2d at 404 (citations omitted).

*wealth ex rel. Williams v. Williams,* 242 Pa.Super. 550, 364 A.2d 410 (1976), we stated this rule as follows:

A [parent] has no duty to aid in providing a college education for his [or her] child, no matter how deserving, willing or able the child may be, unless the [parent] has sufficient estate, earning capacity or income to enable him [or her] to do so without undue hardship to [him or herself].

*Id.,* 242 Pa.Superior Ct. at 552, 364 A.2d at 411 (citations omitted). *See also Miller v. Miller,* 353 Pa.Super. 194, 197, 509 A.2d 402, 404 (1986) ("[A] parent who has sufficient assets and earning capacity to furnish support without undue hardship for a child's college education is charged with the duty to do so."); *Commonwealth ex rel. Ulmer v. Sommerville,* 200 Pa.Super. 640, 644, 190 A.2d 182, 184 (1963) (parent should have sufficient estate, earning capacity or income to enable him or her to pay support without undue hardship). In determining whether a parent has the ability to pay support for his or her adult child's education, a court must consider the reasonable living expenses of that parent. *Miller v. Miller,* 353 Pa.Super. 194, 198, 509 A.2d 402, 404 (1986).

■ In the instant case, the record contains no evidence that the trial court considered father's reasonable living expenses in determining whether it would be an undue hardship for him to pay support towards Michael's college education. There was no discussion or testimony regarding father's living expenses at the hearing which was held by the trial court on father's duty to pay support. In addition, in the trial court's opinion, there is no reference to any finding by the court concerning those expenses. Thus, while the record does include an income and expense statement which father filed, we are unable to discern whether the trial court considered father's ability to pay support for Michael in view of the amount of father's reasonable living expenses. *See Miller,* 353 Pa.Super. at 198, 509 A.2d at 404.

▮▮▮ We must, therefore, vacate the trial court's order of support insofar as it directs father to pay $30.00 per week for the support of Michael and remand for further proceedings consistent with this opinion. In doing so, we note that if the trial court determines that the monthly expenses listed by father on his income and expense statement are reasonable, it would be error for the court to order father to pay support for Michael since father's monthly expenses would exceed his net monthly income. *See Commonwealth ex rel. Williams v. Williams, supra,* 242 Pa.Super. 550, 364 A.2d 410 (1976) (where father's weekly net income after support payments were deducted was $125.44 and his weekly expenses were $141.46, child support order requiring him to aid in providing college education for his adult child was unjustified). If, however, the trial court determines that some of the monthly expenses claimed by father are not reasonable, the court may find that father has the ability to pay support for Michael without undue hardship to himself. In this regard, we point out that while father cannot be ordered to pay support for Michael if it would be an undue hardship on him, that does not mean that father cannot be required to make any personal sacrifices to help support his son through college. *See Commonwealth ex rel. Ulmer v. Sommerville,* 200 Pa.Super. at 644, 190 A.2d at 184.

Order affirmed in part and vacated in part. Case remanded to the trial court for further proceedings consistent with this opinion. Jurisdiction relinquished.