Robert J. MARINO by Louis MARINO, his father, Appellant,

v.

Claire MARINO.

Superior Court of Pennsylvania.

Argued Dec. 12, 1991.

Filed Jan. 13, 1992.

426

Neil M. Krum, Jenkintown, for appellant.

Bernard J. McLafferty, Erdenheim, for appellee.

Before CIRILLO, DEL SOLE and HOFFMAN, JJ.

CIRILLO, Judge:

Before the court is an appeal from a final order of the Court of Common Pleas of Montgomery County denying exceptions to the recommendation of the conciliator in support and vacating a previous order which required appellee Claire Marino ("mother" or "Claire") to pay thirty-five per cent (35%) of Robert Marino's college tuition.

Appellant Robert Marino ("Robert"), a twenty-one year old student at the time of trial, attended community college in Arizona on a part-time basis taking nine credits worth of courses.[1] At the same time Robert worked about twenty

---

1. Robert's enrollment in Arizona was preceded by completing semesters at various other educational institutions discussed *infra*.

hours per week earning approximately $5.00 per hour. Robert's father, Louis Marino ("Louis"), who instituted this suit pursuant to Pa.R.C.P. 1910.3(4),[2] is a teacher in the Philadelphia School District earning approximately $48,-800.00 per year. Claire works as a registered nurse at Sacred Heart Hospital in Philadelphia garnering approximately $34,400.00 annually.

The trial court found that Robert had commenced his college education at Niagara University where he became involved with drugs and was placed on academic probation. Robert withdrew from Niagara after one and one-half years, and upon returning home, was aided by Claire in obtaining counseling for his drug problem. He then enrolled in Montgomery County Community College ("MCCC") in the spring semester of 1990 taking four courses at a cost of $636.00. Robert failed two of these courses and withdrew from a third. Robert, however, remained academically eligible to matriculate in Fall 1990 classes at MCCC, and could have lived at home with his mother and, presumably his father. Instead, Robert went to Arizona with his girlfriend and enrolled in Mesa Community College ("Mesa"). He did this despite his mother's protestations that more affordable and perhaps better community colleges and four-year colleges existed in the Philadelphia area. Claire, however, eventually acquiesced to Robert's desires and reluctantly agreed to assist Robert with tuition to attend Mesa. She signed a blank check and gave it to Robert, telling him not to exceed $1,500.00 as that was the extent of her checking account balance. Robert nevertheless proceeded to pay for the tuition by filling in the cost which was in excess of $1,700.00. Claire stopped

Robert contends that he attended community college in Arizona in order to establish residency so that he could pay an "in-state" resident's tuition at Arizona State University in which he ultimately planned to matriculate.

2. Rule 1910.3(4) provides:
An action shall be brought by a parent on behalf of a child over eighteen years of age to whom a duty of support is owing, with the written consent of the child.
Pa.R.C.P. 1910.3(4).

payment on the check when she found out the cost and then deposited $1,500.00 into Robert's personal checking account. Thereafter, Robert's father paid a bill of $1,743.00 to cover the amount of tuition. Robert earned a 1.75 grade point on a 4.0 scale for that semester. He then enrolled part-time for nine credits the next semester.[3]

Robert's father commenced this action by petition. A conciliator made recommendations in support to which Robert, by his father, filed exceptions. A trial de novo was held in the court of common pleas that resulted in the order which is the subject of this appeal. Robert filed a petition for reconsideration. Three days later, subsequent to his counsel's conversation with the trial judge indicating that there would be no reconsideration, Robert filed this appeal. The trial court did not act on the reconsideration petition.

On appeal, Robert raises two issues for our consideration:

1. Did the court below commit reversible error by finding that appellant Robert J. Marino, a college student, is "emancipated," with no legal basis for that finding?

2. Did the court below commit reversible error by failing to calculate 1) the reasonable needs of Appellant, a college student, and 2) the abilities of Appellant's father and his mother (Appellee) to contribute to his needs?

Claire seeks counsel fees pursuant to Pa.R.A.P. 2744[4] contending that this appeal is frivolous and vexatious.

## I

■ We first must address a procedural irregularity which arose at oral argument on this matter. Upon the

---

**3.** Robert enrolled for six credits at Mesa and three credits at Scottsdale Community College. This arrangement allowed Robert to hold down costs by being a part-time student in two institutions, instead of the higher cost of being a full-time student in one school.

**4.** Rule 2744 provides, in part:

In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including (1) a reasonable counsel fee ... if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious.

Pa.R.A.P. 2744

conclusion of oral argument, Robert moved to withdraw this appeal. The Internal Operating Procedures of this court state:

> After argument or submission of a case on briefs, a petition for discontinuance is referred to the presiding judge of the panel. The panel will determine whether to grant or deny the petition.

Internal Operating Procedures of the Superior Court of Pennsylvania 303(B). Robert's motion to withdraw has come too late and we decline to withdraw the case from appeal. Robert has allowed this case to proceed through extensive briefing, application of the machinery of this court and, finally, oral argument. It was only after oral argument that counsel presented this motion. We will not allow a litigant to avail himself the full process of the court, and then permit that litigant to remove the case from the court's jurisdiction at the very last possible moment. Thus, we deny Robert's motion and will consider the appeal on its merits.

## II

This court expressed the standard of review in adult-child support cases as follows:

> In addressing these claims of trial court error, we are mindful that our review of the trial court's support order is limited to a determination of whether the court abused its discretion in fashioning the award. *Leonard v. Leonard*, 353 Pa.Super. 604, 608, 510 A.2d 827, 829 (1986). An abuse of discretion is not "merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Fee v. Fee*, 344 Pa.Super. 276, 279, 496 A.2d 793, 794 (1985) (quoting *Boni v. Boni*, 302 Pa.Super. 102, 109, 448 A.2d 547, 550 (1982)). A finding of abuse is not lightly made and must rest upon a showing of clear and

convincing evidence. *Shindel v. Leedom,* 350 Pa.Super. 274, 279, 504 A.2d 353, 356 (1986).

*Bedford v. Bedford,* 386 Pa.Super. 349, 353–54, 563 A.2d 102, 104 (1989) (citations omitted).

▄ Robert first contends that the trial court erred in finding that he was emancipated. The importance of the trial court's decision is clear. "A court shall not order either or both parents to pay for the support of a child if the child is emancipated." 23 Pa.C.S.A. § 4323(a).

▄ College payments for the child of divorced parents are a form of child support. *Commonwealth ex. rel. Ulmer v. Sommerville,* 200 Pa.Super. 640, 190 A.2d 182 (1963). However, we have developed a different set of standards to enunciate whether a child is, indeed, entitled to support for college expenses. To this end, before a court may issue an order requiring a parent to pay support for the educational expenses of a child, it must determine that the child is *"able and willing* to successfully pursue his course of studies," and the parent has "sufficient estate, earning capacity or income to enable him to pay the order without undue hardship." 200 Pa.Super. at 643–44, 190 A.2d at 184 (emphasis added). This court has recently expanded the *Sommerville* two prong approach by establishing that where a child is unilaterally and willfully estranged from his or her parent, the duty of college support is lost to the child. *Milne v. Milne,* 383 Pa.Super. 177, 556 A.2d 854 (1989) (en banc) *appeal denied* 524 Pa. 598, 568 A.2d 1248 (1989); *Bedford, supra.* We also note that the duty of a parent to support an adult child through college is not as rigorous as the duty of a parent to provide the necessities of life, such as food, clothing and shelter. *Lederer v. Lederer,* 291 Pa.Super. 22, 435 A.2d 199 (1981). While child support in the form of college tuition is a duty placed upon a parent where the criteria are met, it is clear from the language of 23 Pa.C.S.A. § 4323(a) that we must first determine whether the trial court was correct in finding that Robert was emancipated.

■ Unfortunately, the definitions sections of the the Domestic Relations Code ("Code") do not explain or define the concept of emancipation. Thus, it has fallen upon the courts to make up for this deficiency in the Code. Some guidance for resolving this case may be found in 1 Pa. C.S.A. § 1991. Section 1991 defines "adult" as "[a]n individual 21 years of age or over," and "minor" as "[a]n individual under the age of 21 years." 1 Pa.C.S.A. § 1991. However, the rules of civil procedure define an adult as one who has reached the age of eighteen. Pa.R.C.P. 76. Perhaps most persuasively, section 5302 of title 23 of the Pennsylvania Consolidated Statutes defines "child" as "[a]ny unemancipated person under 18 years of age." In *Brown v. Brown,* 327 Pa.Super. 51, 474 A.2d 1168 (1984), this court stated, "[t]he age of majority, whether 18 or 21, is not one to conjure with in support cases, but it does, absent exceptional circumstances, offer a reliable indicium of the potential autonomy of the child." 327 Pa.Super. at 54, 474 A.2d at 1169. Thus, at minimum, absent some clear exception to the contrary, a person reaches the age of majority, and necessarily is considered emancipated by act of law, when that person arrives at the age of twenty-one.

A review of the relevant case law has uncovered various exceptions to the general rule where children, after reaching majority, were allowed child support. Courts have made exceptions where the child is physically or mentally disabled to the point where that child is unable to provide for himself or herself. *Commonwealth ex rel. Welsh v. Welsh,* 222 Pa.Super. 585, 296 A.2d 891 (1972); *Verna v. Verna,* 288 Pa.Super. 511, 432 A.2d 630 (1981); *Commonwealth ex rel. Cann v. Cann,* 274 Pa.Super. 274, 418 A.2d 403 (1980). A further exception has been made where an adult child is able and willing to attend college and the parent has the means to contribute towards the expenses without undue hardship. *Sommerville, supra.* This exception has been extended to provide support for children attending commercial art school, *Kopp v. Turley,* 359 Pa.Super. 106, 518 A.2d 588 (1986), and post-secondary

vocational training,[5] *Maurer v. Maurer*, 382 Pa.Super. 468, 555 A.2d 1294 (1989) *appeal denied* 522 Pa. 596, 562 A.2d 320 (1989).

■ Child support, however, should not be given where the student shows no aptitude, ability or desire to continue with a course of study designed to make that person self-sufficient. *Id.* We have been reluctant to impose a minimum grade point or proficiency level on students whose support is the result of a post-nuptial agreement. In *Schmucker v. Hanna*, 377 Pa.Super. 301, 547 A.2d 379 (1988) *appeal denied* 522 Pa. 577, 559 A.2d 38 (1989), we declined to relieve a father from child support payments for college expenses because there was a post-nuptial agreement between the spouses which delineated that the father would pay for these expenses. Though the decision does not reveal the child's grade point average, it is clear that the student was not a high level achiever. Applying contract principles, we concluded that if the parties had intended a minimum grade point average to be incorporated in the contract, then they would have explicitly stated that minimum grade point average in the text of the agreement. *Id.* 377 Pa.Super. at 305, 547 A.2d at 381.

In *Commonwealth ex rel. Colligan v. Kass*, 225 Pa.Super. 299, 303 A.2d 225 (1973), we also addressed the notion of grades and how they reflect the ability and motivation to learn in the college support context.[6] The *Kass* court would not allow the child's poor academic achievement in her freshman year stand as the basis for relinquishing her right

---

**5.** The rationale, however, has not been extended to post-college studies. Child support was denied to a twenty-two year old law student in *Brown v. Brown*, 327 Pa.Super. 51, 474 A.2d 1168 (1984), because the court decided that "college" referred to undergraduate study leading to a bachelor's degree. In *Colantoni v. Colantoni*, 220 Pa.Super. 46, 281 A.2d 662 (1971), we declined to extend the mandate of *Sommerville* to a child who was a twenty-four year old, married medical student who established residence in West Virginia.

**6.** *Kass* arose under a property settlement agreement and, thus, also may be distinguished from cases where the court imposes college support. The *Kass* court, however, did not decide the issue on contract principles as the *Schmucker* court had.

to college aid from her father under a property settlement incident to her parents' divorce. The court stated:

> The fact that she did poorly in college in her first year is certainly not unusual nor does it indicate that that she did not have the motivation or ability to pursue higher education. Many freshmen at college, for various reasons, do poorly, then "shape up" after the first year, and become good students ... [M]ost certainly courts should not take over the responsibility of the college authorities and establish arbitrary standards of admission that have to be matched in order for the student to be found "able and willing" to graduate from a course of study at an institution of higher learning.

*Id.,* 225 Pa.Superior Ct. at 302–03, 303 A.2d at 227. The court concluded that the child's willingness and ability to succeed in college was demonstrated by the college's acceptance and the child's attendance at that school. *Id.*

*Kass,* however, is readily distinguishable from the instant matter. First, there was a college support agreement which indicates that the parent was aware of the impending costs of his child's education. In the present case, Claire and Louis had no formal college support agreement. In *Kass,* the court noted the fine reputations of the four-year college at issue; whereas, in this case the schools at issue are community colleges.[7] Most importantly, though, the child in *Kass* had one poor year, and the court was not willing to glean from this a lack of motivation on the part of the student. Here, there is a history of poor academic achievement covering numerous semesters at three different schools.

■ While we find *Kass* and *Schmucker* instructive, we are not bound by their dictates as they are factually distinct from this case. However, we shall follow the *Kass* court's

---

7. We do not wish to disparage community colleges as they are fine institutions of higher learning and do provide an important role in preparing prospective students for successful college achievement among other things. However, the colleges at issue in *Kass* are known for their high admissions standards and academic competitiveness.

suggestion and not impose an arbitrary grade point which must be achieved in order to support the ability to success-fully complete college requirement of *Sommerville.* Setting such an average would be unfair and impossible to apply as different schools grade their students on different scales, have widely divergent standards of achievement and varied standards of competitiveness. A far better approach is to evaluate each individual student's accomplishments and failures within that child's academic history and then determine if a suitable level of academic achievement was attained. This is reasonable for a court of law sitting in a support matter. As we stated in *Milne, supra:*

> [T]he court stands in loco parentis in making such decisions. For that reason we must put ourselves in the shoes of each parent whose case comes before us. Since each case presents unique individuals and circumstances, it is incumbent upon our judiciary to fashion each decision with the best interests of the family in mind.

383 Pa.Super. at 187, 556 A.2d at 859–60. Acting in loco parentis, we must decide whether a parent of a child, whose academic history reflects the one before the court, would continue to pay for that child's education.

Thus, it is at this point that we examine Robert's claim of trial court error in finding emancipation. The trial court found that Robert was emancipated as he "ha[d] attained majority, ha[d] no disabilities, but [was] not taking advantage of the opportunity to acquire advanced training to help prepare him for his future." To affirm this decision we must find that Robert was not able or willing to pursue his course of studies. The record clearly supports such a finding.

Robert had amassed an abysmal academic record after his bout with drugs at Niagara which forced him into academic probation. Robert then enrolled in MCCC, taking four courses. Of these four courses Robert passed one, failed two and withdrew from the fourth. The next semester, though academically eligible to return to either Niagara or MCCC, Robert enrolled in Mesa where he aver-

aged a 1.75 grade point on a 4.0 scale. He has spent his fourth, fifth and sixth semesters (and during the course of this litigation, his seventh semester) in programs which only offer four semesters of instruction to an individual.

This academic record, replete with failures, withdrawals, academic probation and low scores in general, indicates, at minimum, a lack of commitment and seriousness on Robert's part to complete his studies. Moreover, Robert's academic record attests to this court an inability, if not an unwillingness, to successfully complete his educational ventures. We, therefore, find that the trial court's denial of child support was correct as Robert has failed to show an ability to perform on the college level and a reasonable parent in Claire's situation would choose not to continue payments for that child's studies. Thus, by not coming within the college support exception for emancipation and having reached the age of twenty-one, the trial court correctly determined that Robert was emancipated. While this discussion is enough to affirm the trial court, we feel compelled to address certain other indications of Robert's emancipation.

Case law in the Commonwealth has not been explicitly clear regarding the concept of emancipation. However, two recent decisions have enlightened the bench and bar, to some extent, concerning when a child has become emancipated. In *Griffin v. Griffin,* 384 Pa.Super. 188, 558 A.2d 75 (1989) *appeal denied* 524 Pa. 621, 571 A.2d 383 (1989), this court affirmed an order requiring a father to pay college support to a daughter where the daughter herself had given birth to a child. In reaching this decision the court emphasized the fact that the daughter was not married and the fact that she did not leave the family home to live separately. The father argued that his daughter's age, twenty-one, and her status as the mother of child rendered her ineligible for support. Ultimately, we decided that parenthood *alone* was not a sufficient reason to conclude that a child was emancipated. *Id.* 384 Pa.Super. at 199, 558 A.2d at 81.

In *Maurer, supra,* this court was confronted with a denial of educational aid for a son by the trial court. The son was scheduled for induction into the army,[8] but was released from this commitment because he contracted appendicitis. The son then worked at a garage and enrolled in a program of vocational training in automobiles and preparing the students to start their own small businesses. The trial court declined child support because the son was attending a course of study leading to a bachelors degree. The court first extended the student support to vocational training programs "if the child has the ability and desire to successfully complete the course of studies." 382 Pa.Super. at 472, 555 A.2d at 1296.

Next the court addressed the notion of emancipation generally. The *Maurer* court stated:

> After a careful analysis of the term and concept of emancipation, once the other requirements are met permitting a child to pursue advanced training, the criterion that is applicable in a support/educational situation *is whether the child is dependent upon his parents for support or is independent of such needs* ... Emancipation is a question of fact to be determined by the circumstances presented in each case.

382 Pa.Super. at 475, 555 A.2d at 1297–98 (emphasis supplied). Thus, the *Maurer* decision allows courts to address a range of circumstances in child educational support matters. After reviewing the entire record, we believe that there are many circumstances which lead to the conclusion that Robert is emancipated.

■ Robert left the Philadelphia area to live in Arizona with his girlfriend.[9] While we have yet to declare a child's marriage, or quasi-marital relations, a conclusive factor in determining whether a child is emancipated for educational

---

8. Induction into the army may be grounds for emancipation.

9. The record indicates that Robert went to Arizona to stay with his girlfriend for a week's visit. This week visit was prolonged when Robert decided to stay and enroll in community college. It is not clear from the record exactly how long Robert lived with his girlfriend.

support purposes, we are inclined to consider it a factor to be weighed in the totality of circumstances test suggested by *Maurer*.[10] We note, however, that the marital status of a minor conclusively determines his or her standing in applying for public assistance.[11] We are constrained to conclude that Robert's decision to attend community college in Arizona was reached not through consultation and discussion with his parents, but was motivated by his desire to be with his girlfriend. Further, where a person leaves the home of a parent, *see Griffin, supra,* moves thousands of miles primarily motivated by a desire to live with a girlfriend or boyfriend, we can reasonably conclude that a quasi-marital relationship exists. This relationship does not carry all of the incidents and benefits of marriage, but it does indicate an intention to live and act as an adult. There is testimony to support this conclusion.

Claire was notified of Robert's decision to go to Arizona after he and his father had decided that Robert could move. Claire told Robert that she did not approve of what he was doing and further explained that she felt a comparable, if not superior, education was attainable in the Philadelphia area at a much lower cost. Louis Marino stated that Robert went out to Arizona to visit his girlfriend because, after determining that he could not go back to Niagara for financial reasons, Robert did not know what else to do. The decision to go to Arizona clearly did not stem from a desire to attend school there. We note that Robert has been diligent in containing the costs of his education in Arizona and is attempting to obtain residency and gain access to

10. Section 4321 of the Domestic Relations Code states:
 (1) Married persons are liable for the support of each other according to their respective abilities to support as provided by law.
 23 Pa.C.S. § 4321(1). This section would appear to indicate that married people have become emancipated from their parents as support rights come from the spouses.

11. Section 145.62 of Title 55 of the Pennsylvania Code provides:
 A minor who has never been married or has the marriage annulled, but who remains under the control of the parents is unemancipated whether he lives in the parental household or not.
 55 Pa.Code § 145.62.

Arizona State University. We conclude, however, that these financial concerns were not the primary motivation for Robert's decision to move to Arizona.

Robert has also expressed a desire to be independent in a letter addressed to "Domestic Relations" which appears as an exhibit from the trial. The letter states in part:

> The main reason I wrote this letter is so that I can handle my own financial responsibilities without being put between my parents. I feel as though that if they want to contribute to my financial needs, that they do it as an act of parenthood and not as an act of spite for each other which I feel as though they sometimes do, whether [sic] they know it or not.

This letter clearly indicates Robert's desire and intention to be financially freed from his parents. The letter also accurately expresses Robert's wish that any college or other expenses that Claire or Louis decide to make may continue to be made as a gesture of love and parenthood. Though we decide that Robert is emancipated, his parents, of course, may choose to continue to contribute to Robert's education in any they wish. When a child approaches a parent, with hat in hand, it is the rare parent who would turn away. However, no parent in an intact family is compelled to do so, and we will not require such in the circumstances before us. Nonetheless, we must consider the desires of Robert, who we point out is an adult, in determining whether he is emancipated.[12] Two final consid-

---

12. Though it is not a issue properly considered in the totality of circumstances inquiry for emancipation, we cannot dismiss from our discussion Robert's conduct in taking money offered by his mother to aid in paying tuition. Claire gave Robert a blank check to take to Arizona upon her reluctantly agreeing that she would help him with tuition. Robert, after being told by his mother that she had limited funds available in her checking account, proceeded to enter an amount on the check in excess of the amount Claire had told him she had available. Claire, when told of the potential overdraft, stopped payment on the check and deposited the money in Robert's savings account, from which Robert could withdraw funds in Arizona. Robert's conduct certainly illustrates a contempt for acting in a mature and adult fashion which we hope will be remedied by his learning to handle his financial resources in a more mature manner.

erations which suggest Robert's emancipation are that Robert is now employed in Arizona as a part-time worker and that he has reached the age of twenty-one.

When we examine the the circumstances before us, we must conclude that Robert is emancipated. He has moved across the country in an effort to be with his girlfriend. Robert expressed an interest in handling his own financial interests separately, and has taken a job to help support himself. We are, therefore, compelled to conclude that Robert is emancipated in light of the circumstances here. *Maurer, supra.*

 A final consideration we are obliged to address is our previous holding that college support payments shall not be ordered after the child's twenty-third birthday except under exceptional circumstances. *DeWalt v. DeWalt,* 365 Pa.Super. 280, 289–90, 529 A.2d 508, 513 (1987); *see also Brown,* 327 Pa.Super. at 55, 474 A.2d at 1170. *Dewalt* is easily distinguishable from the case before us. First we note, when addressing child support claims in the educational context the goal for the court is to attempt to replicate, as nearly as possible, the decision the intact family would have made. *Milne,* 383 Pa.Super at 184, 556 A.2d at 861; *Pharoah v. Lapes,* 391 Pa.Super. 585, 598–99, 571 A.2d 1070, 1077 (1990) (Cirillo, P.J., dissenting); *see also* Horan, *Postminority Support for College Education—A Legally Enforceable Obligation in Divorce Proceedings?,* 20 Fam. L.Q. 589, 607 (1987). As we concluded above, the oldest a person can be to presume emancipation is twenty-one years.[13] Thus, an intact family may cease to support a child

---

**13.** We choose twenty-one, opposed to eighteen, because the supreme court has not made expressly clear the age of majority for support cases. In *Sutliff v. Sutliff,* 515 Pa. 393, 528 A.2d 1318 (1987), our supreme court disagreed with our court on the age of majority when our court distinguished in a support case between children above eighteen and those below eighteen. The supreme court stated:

Superior Court, relying on Pa.R.C.P. 76, incorrectly defined the age of majority as eighteen. The age of majority for substantive purposes in civil matters remains twenty-one. 1 Pa.C.S. § 1991; *In re Pincus Estate,* 378 Pa. 102, 105 A.2d 82 (1954). However, 23 Pa.C.S. § 4321, enacted in October, 1985, distinguishes between children

under any circumstances, other than physical or mental disability, when a child reaches the age of majority. However, in an intact family where a child is on the verge of completing college, parents overwhelmingly provide support to the child because a level of interest and committment in completing and obtaining a degree was displayed. In *De-Walt*, we stated that, in the usual case, an interested and committed person will have typically had four years to complete a degree when he or she reaches twenty-three. 365 Pa.Super. at 290, 529 A.2d at 513.

In the instant case, Robert has not shown the requisite interest in obtaining a degree to warrant a court order against his mother to provide support for his education. He has reached twenty-one and has made little progress toward completing a degree. Most recently, Robert has spent four semesters in community colleges which do not have bachelors degree programs and has performed terribly in those colleges. He had also demonstrated lackluster performance in his previous stint at Niagara. In *DeWalt*, we stated:

> If [a child] has not demonstrated this committment [to complete a college education] and has failed to take advantage of the opportunity given him, he has waived any right to complain about lack of parental interest.

*Id.* Robert's record has confirmed to this court the lack of desire and committment discussed in *DeWalt*. We therefore find that, although Robert has not reached twenty-three, his failure to show a committment to his education prohibits this court from requiring college support payments on his behalf.

As we stated earlier, the court on support matters sits in loco parentis in order to protect the interests of the children and the remainder of the family. It is important that we

eighteen years of age and younger and children older than eighteen for purposes of support. We do not believe that 23 Pa.C.S. § 4321 is a departure from the established law of the Commonwealth discussed *infra.*
*Sutliff*, 515 Pa. at 401, 528 A.2d at 1322. From this we infer that the age of majority for substantive purposes is twenty-one.

ensure that children of divorced parents retain the same rights and entitlements as those children who live in families where the parents are married. This is the job of the court sitting in loco parentis. However, where the relationship between parent and child comes to the point where the parent or child may end the incidents of the family relationship, then the courts are powerless to resolve disputes which arise under these conditions. *See Pharoah*, 391 Pa.Super. at 599, 571 A.2d at 1077–78 (Cirillo, P.J., dissenting) (child of non-divorced parents may not, after discussion of whether to attend more expensive or less expensive school, attend more expensive school against parent's wishes and then sue them for the difference in tuition).

It is our hope that this decision will foster better communication between divorced parents and their children in considering college expenses. Such communication would clarify and cause the parents and child to contemplate each other's rights, responsibilities, duties and privileges.

We recognize and are saddened by the reality that all too often the children are the victims of "friendly fire" between divorced parents. However, discussion about college expenses among the two parents, along with the child, should expose the financial weakness of the child and allow each parent to take better aim at the problem and not at each other at the expense of the children. Such communication may lead to written support agreements where matters such as who pays the college expenses, at what age those expenses expire, any minimum grade point a child must receive in college, as well as numerous other decisions would be delineated. This may prevent painful litigation, and, most importantly, this would allow both parents to realize the warm, uplifting joy one feels upon seeing his or her child take diploma in hand.

Thus, in considering whether a child is emancipated for educational aid support cases, the court should look at all of the circumstances presented by that case. *Maurer, supra.* Among the circumstances a court should consider are the age of the child, the child's desire to attend school

which may be illustrated by the child's level of performance during that schooling, whether the child is living in the family home or has moved away, any marital or quasi-marital status the child may be involved in, and the child's express desires. In the present case, Robert's school performance, his age, his move to Arizona to be with his girlfriend, and his desire to account for his financial responsibilities indicates that he is emancipated. The trial court, therefore, did not commit an abuse of discretion by declaring Robert emancipated. *Bedford, supra.*

### III

Robert's second argument is that the trial court erred by failing to calculate his reasonable needs, and the ability of the parents, individually, to contribute to his college expenses. This argument lacks merit. Since we have already determined that the trial court was correct in finding that Robert was emancipated, no support was necessary. *Maurer, supra; Sommerville, supra.* The trial court was not required to determine Robert's needs and the parents' abilities to pay because the court properly concluded that Robert was emancipated for purposes of child support. Therefore, the trial court did not commit an error of law or abuse its discretion. *Bedford, supra.*

### IV

Finally, Claire seeks a reasonable attorney's fee pursuant to Pennsylvania Rule of Appellate Procedure 2744. A reasonable attorney's fee may granted where an appeal is frivolous or results from vexatious conduct. Pa. R.A.P. 2744. An appeal is frivolous where it lacks any basis in law or fact. *Smith v. Board of Probation and Parole,* 524 Pa. 500, 506, 574 A.2d 558, 562 (1990). Simply because an appeal lacks merit does not make it frivolous. *Id.* We do not find that this appeal resulted from vexatious conduct or that it is frivolous.

Order affirmed. Request for attorney's fees denied.

DEL SOLE, J., concurs in the result.