THOMAS, Judge.
D.E. (“the father”) appeals from a judgment of the Madison District Court (“the trial court”), holding him in contempt for his willful failure and refusal to abide by the trial court’s May 3, 2010, judgment concerning payment of a child-support ar-rearage, orthodontic expenses, attorney fees, and postminority educational expenses of the son of the father and T.M. (“the mother”); sentencing him to jail for 40 days, which sentence was suspended on the condition that he make the payments ordered in the judgment; and ordering the payment of additional postminority educational expenses.
On April 20, 2012, the mother filed a petition for a “rule nisi and enforcement of a prior order of modification” against the father for his alleged failure to abide by the terms of the trial court’s May 2010 judgment. On May 30, 2012, the father answered the petition, denying the general allegations.
*1144 On January 28, 2013, the trial court conducted a hearing regarding the mother’s petition for a rule nisi. The mother testified that the father had not reimbursed her the sum of $3,321.95 for the son’s first semester of college within 60 days of the entry of the May 2010 judgment, as ordered in that judgment; that the father had failed to pay $7,500 of the past-due child support within 60 days, as ordered in the May 2010 judgment; and that the father had not paid $5,500, as ordered in paragraph 6 of the May 2010 judgment, or surrendered himself to jail in lieu of payment. Additionally, the mother testified that the father had failed to pay attorney fees in the amount of $3,990, as ordered in paragraph 8 of the May 2010 judgment, and that he had failed to pay his portion of the son’s orthodontic expenses, as ordered in paragraph 7 of the May 2010 judgment.[1] The mother testified that the father had paid her only $400 per month from the time the May 2010 judgment was entered until the time that funds from the father’s employer began to be garnished in March 2012. The mother testified that she received approximately $1,000 per month in garnished funds and that when she began receiving those funds the father’s $400-per-month payment had ceased. She further testified that the May 2010 judgment was for past-due payments in the amount of $42,160.06 and that the interest due on the child-support arrear-age was $16,755.84; the mother further testified that, based upon her calculations of payments the father had made, in addition to the amount of funds that had been garnished at the time of the contempt trial, the father owed $21,485.16 in past-due payments and interest in the amount of $27,631.31 for a total of $49,116.47 due under the May 2010 judgment. She requested that the father be held in contempt for failing to abide by the May 2010 judgment by not paying the amounts owed and that the father also be ordered to serve the jail time suspended under the May 2010 judgment for his failure to pay. The mother testified that the father had filed a bankruptcy petition between the time of the entry of the May 2010 judgment and the trial date but that the father’s bankruptcy petition had been dismissed.
The mother testified that the son is a senior at Georgia State University in Atlanta. She testified that the son was a resident of Georgia and that he continues to be a resident of Georgia, and, thus, the son receives in-state tuition at Georgia State University. The mother testified that the son had taken out loans in his name to cover tuition expenses and that she had also taken out loans and had used her own money to pay the son’s college expenses. She testified that, although the May 2010 judgment ordered that he pay half of the son’s postminority educational expenses, the father had not contributed toward the son’s college expenses despite the mother’s having provided the father information about the amount to pay through his bankruptcy attorney.
The son testified that he is 21 years old and that he is a student at Georgia State University studying accounting and finance. He testified that his grade point average (“GPA”) in his major program is 2.95 and that his overall GPA is 2.54. The son testified that the father had not assisted him with his tuition or college expenses as far as he knew and that he had paid for his college expenses in cash and through student loans. The son testified that he *1145 had spoken with the father once since 2010. The son also testified that, based on his research and knowledge gained through a friend who attended the University of Alabama, the average tuition and fees per semester for an in-state student at the University of Alabama was $4,600; he also said that the average tuition and fees for an out-of-state student was $11,475 per semester. He further testified that he had received the HOPE scholarship for the Fall 2009 and the Spring 2012 semesters in the amount of $2,000 per semester and that he had received another scholarship, a retention scholarship, in the amount of $1,400 from the College of Business for the Spring 2013 semester.
The son testified that he had prepared a spreadsheet from “actual bills” he had “incurred” for his college expenses. According to the spreadsheet, the son had incurred a total of $75,821.41 in postminority college expenses since the second semester of his freshman year. However, the spreadsheet does not reflect that the son’s HOPE scholarship for the Spring 2010 semester or the retention scholarship for the Spring 2013 semester were deducted from the expenses the son incurred or otherwise indicate that those scholarships were used to pay other postminority educational expenses that may have been incurred by the son. In addition, on cross-examination, the son testified that the spreadsheet reflected “expenses” but did not reflect the actual amount he had paid. Although he testified that he had taken out loans to pay his postminority educational expenses, he did not produce any evidence concerning the amount of those loans; he did testify that his loan payments were deferred until after he graduated from college.
The father testified that he lives in Oxford and that he is employed at the Anni-ston Army Depot where he writes plans for the federal government. He testified that he had been writing plans for the federal government since 1998 and that, before that time, he had been in the military. Specifically, in regard to his employment history, he testified that he had been in the military from 1990 until 1996, that he had started working for the federal government in 1997, that he had been employed at the Army Depot in Anniston from 2004 until 2008, that he had then gone to Germany for one year and had begun working at the Army Depot in Anni-ston again in September 2009. The father testified that his gross annual employment income is $82,000. He testified that his federal tax return for 2010 indicated that he had an income of $82,060.60, that his 2011 tax return indicated that he had an income of $79,559.57, and that, although he had not filed his 2012 tax return, his leave and earning statements for that year indicated a total income of $82,570. In addition to his employment income, he testified that he receives $600 per month, or $7,200 annually, in disability income. The father further testified that he did not retire from the military but that he received a onetime severance payment in the amount of $80,000 in 1998, after he had ceased his military service.
The father testified that the son is not covered under his health insurance because, he said, he had not received information from the mother or the son to provide any health insurance. The father also testified that he had not made the lump-sum payments within 60 days as ordered in the trial court’s May 2010 judgment because, he said, he could not afford those payments. However, he testified that he had been paying $400 per month until the time the mother had had his wages garnished in the amount of $1,100 per month. He testified that he had not paid any college expenses for the son but had made only the payments in the *1146 amount the $400 per month. He further testified that he had never received a statement from the son or the mother regarding the son’s college expenses, although, he said, his e-mail address had not changed over the past 10 years.
The father testified that he did not have the ability to pay the amounts ordered in the May 2010 judgment due to his limited amount of net income and large expenses and due to the fact that he did not have any additional assets. Specifically, he testified that his net monthly income from both his salary and his disability income is $2,965.44. He further testified that he had the following monthly expenses: rent in the amount of $900;[2] approximately $800 for automobile insurance and gas; spousal support in the amount of $1,400; and a furniture payment in the amount of $80. He stated that his additional expenses include the cost of food, repayment of an $11,000 loan, and the monthly payment on a loan for an automobile for one of his children, for which he had cosigned. However, he did not testify regarding the monthly amounts of the car payment, the monthly payment on the $11,000 loan, or food expenses. The father testified that, after paying his monthly obligations, he goes deeper into debt in the amount of $900 per month. The mother presented evidence from the father’s employer indicating that the father’s disposable income per pay period is $2,107.51. The father testified that he had 26 pay periods per year.
The father further testified that he did not have any additional assets besides $2,000 in a retirement account, against which he was not allowed to borrow. He testified that he had applied for loans at AOD Federal Credit Union, Pentagon Federal Credit Union,[3] and local agencies in Anniston but that he had been denied on each attempt due to his having filed for bankruptcy.
On January 30, 2013, the trial court entered a judgment finding the father to be in criminal contempt for eight separate violations of the May 2010 judgment and ordering him to serve 40 days in jail, ordering the father to pay $27,150.70 for his half of the son’s postminority educational expenses incurred since the entry of the May 2010 judgment,[4] and awarding the mother attorney fees. On February 5, 2013, the father filed a motion to alter, amend, or vacate the trial court’s judgment. The trial court held a hearing on the father’s postjudgment motion on February 14, 2013, and, following that hearing, it entered an order allowing the father to serve his jail sentence on weekends so as not to interfere with his employment and noted that it was still considering the remaining issues raised by the father in his *1147 postjudgment motion. On February 19, 2018, the trial court entered an order denying the father’s postjudgment motion as to all the remaining issues. The father filed a timely notice of appeal on March 1, 2013.

Discussion

The father first argues that the trial court was not presented with evidence demonstrating, beyond a reasonable doubt, that he had willfully failed and refused to comply with the May 2010 judgment. Specifically, he argues that the evidence indicates that he did not have the ability to pay and, thus, that the trial court could not have concluded that his failure to pay was a willful refusal to pay. We disagree.
“[T]he standard of review in an appeal from an adjudication of criminal contempt occurring in a civil case is whether the offense, i.e., the contempt, was proved beyond a reasonable doubt. Hicks v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); Combs v. Ryan’s Coal Co., 785 F.2d 970 (11th Cir.1986); and United States v. Turner, 812 F.2d 1552 (11th Cir.1987) .... In Turner, the Court, in discussing the standard of review in a criminal-contempt case, said:
“ ‘The essential elements of the criminal contempt for which punishment has been imposed on [the defendant] are that the court entered a lawful order of reasonable specificity, [the defendant] violated it, and the violation was wilful. Guilt may be determined and punishment imposed only if each of these elements has been proved beyond a reasonable doubt.’
“Turner, 812 F.2d at 1563. The Turner court also stated, quoting Gordon v. United States, 438 F.2d 858, 868 n. 30 (5th Cir.1971):
“ ‘ “The test is whether the evidence is sufficient to justify the trial judge, as trier of the facts, in concluding beyond a reasonable doubt that the defendant was guilty, and that such evidence is inconsistent with any reasonable hypothesis of his innocence. Such is the substantial evidence test.” ’
“Turner, 812 F.2d at 1563.”
Ex parte Ferguson, 819 So.2d 626, 629 (Ala.2001). Moreover, “[i]nability to pay is a defense to a contempt action in a child-support-arrearage case.” T.L.D. v. C.G., 849 So.2d 200, 205 (Ala.Civ.App.2002).
We conclude that the evidence supports the trial court’s finding that the father willfully violated the May 2010 judgment by not paying the amounts due under that judgment or surrendering himself to the Madison County jail. In this case, the trial court’s judgment explicitly found “that [the father], through the commission of willful and intentional aet[s] by him, violated this Court’s Order, dated May 3, 2010,” and that the father’s “failure is due to his willful neglect and is not due to an inability to pay,” amounting to eight separate violations of the trial court’s May 2010 judgment. The evidence supports the trial court’s findings that the father’s failure to pay was not due to an inability to pay. “[W]hen a delinquent payor presents evidence of an inability to pay as a defense to a charge of contempt, the burden of proof falls upon the payee to show ‘beyond a reasonable doubt’ that the payor can pay.” McMorrough v. McMorrough, 930 So.2d 511, 514 (Ala.Civ.App.2005) (quoting Thomas v. Thomas, 406 So.2d 939, 942 (Ala.Civ.App.1981)).
In this case, the mother presented extensive evidence regarding the father’s income and his ability to pay. The evidence indicated that since 2009 the father had worked at the Anniston Army Depot making approximately $82,000 in annual in *1148 come along with an additional $7,200 in annual disability payments. Thus, the father had approximately $89,200 in income from which he could have paid the obligations ordered in the May 2010 judgment. Additionally, the mother presented evidence indicating that the father had received a severance package in the amount of $80,000 in 1998 and that his disposable income per pay period, of which he had 26 per year, was $2,107.51. Accordingly, the mother presented evidence indicating that the father had the ability to pay the May 2010 judgment.
The father testified that, although he had an income of approximately $90,000 per year, he did not have the ability to pay due to his other expenses. Those expenses included $900 per month for rent, $800 per month for automobile insurance and gas, spousal support of $1,400 per month,[5] and an $80-per-month furniture payment. He also testified that he was obligated to make a monthly loan payment for a car for one of his children, to pay another monthly loan payment, and to pay for groceries each month; however, he failed to testify regarding the amounts of those additional financial obligations. Upon questioning by the trial court, the father testified that the spousal-support obligation and car-note payment had been incurred after he had incurred the initial child-support obligation for the son. Moreover, the father testified that, although the letter from his employer indicated that his disposable income per pay period was $2,107.51, his true disposable income per pay period was only $1,091.74. He also testified that he did not have any separate assets against which he could borrow and that he was unable to obtain any loans to pay the amounts due because he had filed for bankruptcy. Thus, the ore tenus evidence concerning the father’s ability to pay was conflicting, and the trial court, as the trier of fact, was forced to make credibility determinations concerning the witnesses. See Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986) (“The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.”). Accordingly, we conclude that the trial court could have reasonably concluded that the father had the ability to pay the May 2010 judgment and, thus, that his failure to abide by that judgment was a willful violation of that judgment and contemptuous behavior. Therefore, we affirm the trial court’s judgment insofar as it found the father to be in criminal contempt.
Next, the father argues that the trial court erred in awarding the mother attorney fees because, he says, the action was for criminal contempt and such fees are not allowed. The father cites Ex parte Collins, 860 So.2d 1259 (Ala.2003), in support of his argument. In Ex parte Collins, our supreme court reversed a judgment of this court affirming a trial court’s award of attorney fees in a criminal-contempt action. Id. at 1260. In reversing this court’s judgment, our supreme court stated:
“This award of attorney fees directly conflicts with our opinion in In re State ex rel. Payne v. Empire Life Insurance Co. of America, 351 So.2d 538, 545 (Ala.1977), wherein we stated that, in a criminal-contempt action, ‘the award of attorney’s fees is not proper’ and that part of the trial court’s order purporting to award an attorney fee ‘must be considered as mere surplusage and severed from the judgment decree.’ See also Ex parte J.R.W., 667 So.2d 88, 91 (Ala.1995) (noting that “while awarding an attorney *1149 fee in a criminal contempt proceeding is improper, it does not void the judgment’).”
Id. Thus, we agree with the father that the trial court erred to reversal in awarding the mother attorney fees in the criminal-contempt action. Accordingly, we reverse the trial court’s judgment insofar as it awarded attorney fees to the mother in the criminal-contempt proceeding.
The father also argues that the trial court erred in ordering him to pay $27,150.70 for the son’s postminority educational expenses. The father’s argument regarding this third issue is twofold. First, he contends that the judgment is due to be reversed because, he says, the mother failed to present “sufficient evidence as to the costs incurred for the [sonj’s attendance at Georgia State University.” Second, he argues that the trial court’s judgment regarding the amount of postminority educational expenses is due to be reversed because, he says, the mother failed to show that the “amount of [post-minority educational] expenses requested was in accordance with the May 3, 2010, judgment,” which, the father says, limited postminority educational expenses to the amount charged by a state-supported college located in the State of Alabama.
Prior to our supreme court’s decision in Ex parte Christopher, 145 So.3d 60 (Ala.2013), see supra note 3, Alabama caselaw provided:
“A parent has a legal duty to provide or aid in providing a college education for his/her child if the child demonstrates the ability and willingness to attain a higher education and the parent has sufficient estate, earning capacity, or income to provide financial assistance without undue hardship to himself. Flatley v. Flatley, 42 Ill.App.3d 494, 1 Ill.Dec. 155, 356 N.E.2d 155 (1976); Hambrick v. Prestwood, 382 So.2d 474 (Miss.1980); Newburgh v. Arrigo, 88 N.J. 529, 443 A.2d 1031 (1982); Bedford v. Bedford, 386 Pa.Super. 349, 563 A.2d 102 (1989); Deiley v. Deiley, 281 Pa.Super. 288, 422 A.2d 172 (1980). The use of the term ‘undue hardship’ does not mean without any personal sacrifice.”
Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990).
We first consider the father’s argument that the mother failed to provide sufficient evidence of the expenses the son had actually incurred to attend Georgia State University. The record indicates that the son testified as to the expenses he had incurred to attend Georgia State University. The son testified that the expenses were not estimated expenses but were the expenses that he had already incurred. Specifically, the spreadsheet shows that he had incurred the following expenses: $7,755.50 for the Spring 2010 semester, $9,019.50 for the Fall 2010 semester, $7,878.50 for the Spring 2011 semester, $9,369.38 for the Fall 2011 semester, $9,369.38 for the Spring 2012 semester, $3,203.35 for the Summer 2012 semester, $15,121.50 for the Fall 2012 semester, and $13,604.30 for the Spring 2013 semester. Those expenses total $75,321.41, of which the father was required to pay half, or $37,660.71. However, the trial court ordered the father to pay $27,150.70 for his portion of the son’s postminority educational expenses not addressed in the May 2010 judgment. Thus, it appears that the trial court deducted an amount exceeding the $2,000 HOPE scholarship for the Spring 2010 semester and the $1,400 retention scholarship for the Spring 2013 semester from the amount of the expenses presented at trial to determine the father’s postminority-educational-support obligation.
The trial court was free to consider the testimony and documentary evidence *1150 in determining the postminority educational expenses that the father was obligated to pay; all that is required is that the award be supported by the evidence presented, represent only that percentage the father was required to pay, and be an amount reasonably necessary for the son to attend college. Wagner v. Wagner, 989 So.2d 572, 581-82 (Ala.Civ.App.2008) (“[P]ostminority educational support may include more than the costs of tuition and books, and may include other expenses that the trial court, acting within its discretion, determines to be reasonably necessary for the child to attend college.”). Therefore, based on the evidence contained in the appellate record,-we conclude that the trial court’s award of $27,150.70 in postminority educational expenses is supported by the evidence presented at trial. See Allsopp v. Bolding, 86 So.3d 952, 959 (Ala.2011) (“ ‘Under the ore tenus standard of review, we must accept as true the facts found by the trial court if there is substantial evidence to support the trial court’s findings.’ ” (quoting Beasley v. Mellon Fin. Servs. Corp., 569 So.2d 389, 393 (Ala.1990))).
We turn next to the father’s second argument regarding the trial court’s award of postminority educational expenses. The father contends that the award of postmi-nority educational expenses is due to be reversed because, he says, the mother failed to present evidence indicating that the expenses incurred were “in accordance with” the May 2010 judgment. Specifically, he contends that the mother failed to present evidence from which the trial court could have determined that the son’s postminority educational expenses were equal to or lesser than the amount “charged” by a state-chartered university in Alabama. Although the father fails to cite any statutes or caselaw in support of this contention or to fully develop his second argument targeted toward the trial court’s alleged error in awarding postmi-nority educational expenses, we will briefly address the father’s argument. The son testified that the average tuition charged by the University of Alabama to an instate resident was $4,600. The tuition and fees the son incurred for all but one of the son’s semesters was equal to or less than that amount; the tuition and fees the son paid for the Fall 2012 semester was $4,892. As a result, we conclude that the mother and the son proved that his tuition at Georgia State University was equivalent to the amount the son would have been charged for his education at a state-chartered university in Alabama. Thus, we affirm the trial court’s judgment insofar as it ordered the father to pay $27,150.70 in postminority educational expenses for the son.

Conclusion

We conclude, based upon the reasons stated above, that the trial court did not err to reversal in finding the father to be in criminal contempt of court for failing to comply with the trial court’s May 2010 judgment or in ordering the father to pay $27,150.70 in postminority educational expenses. However, we reverse the trial court’s judgment insofar as it awarded the mother attorney fees related to the criminal-contempt action, and we remand the cause for the trial court to vacate that portion of its judgment.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. The mother testified that the orthodontic bill was $4,600 and that the father’s portion was $2,300.

. The $900-per-month rental payment included the father’s monthly utility expenses. Thus, he did not incur any additional monthly expenses for utilities.

. Although the father testified that he sought loans at ''Pentagon” without specifying whether "Pentagon” is a banking institution, credit union, or other lending agency, we presume that the father is referring to Pentagon Federal Credit Union.

. We note that on October 4, 2013, the Alabama Supreme Court released Ex parte Christopher, [Ms. 1120387, October 4, 2013] - So.3d -,-(Ala.2013), in which it overruled Ex parte Bayliss, 550 So.2d 986 (Ala.1989), insofar as it had construed Ala.Code 1975, § 30-3-1, to permit trial courts to award postminority educational support. The Alabama Supreme Court expressly made its opinion prospective only, stating that it would not disturb a postminority-educational-sup-port obligation that was already final, like the father’s obligation in the present case, which was established in the May 2010 judgment. Ex parte Christopher, — So.3d at -. Thus, Ex parte Christopher has no impact on the present case.

. The spousal support is paid to the father's former spouse, not to the mother.