J. A21034/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| K.L.C.-S. A/K/A K.L.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| D.W.S., | : | No. 1254 EDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered April 24, 2019,
in the Court of Common Pleas of Bucks County
Family Division at No. A06-2015-60567-C

BEFORE:  LAZARUS, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED DECEMBER 15, 2020**

K.L.C.S. a/k/a K.L.C. ("Mother") appeals from the order dated April 22, 2019, and entered on April 24, 2019, that held her in contempt of the existing custody order between her and D.W.S. ("Father") regarding their two minor children, J.S. (a female, born in May of 2002), and J.S. (a male, born in October of 2003) (collectively, "the Children").[1]  Additionally, the order required Mother to undergo in-person co-parenting counseling sessions, and once completed, Mother and Father to jointly complete co-parenting

---

[1] In May of 2020, the parties' daughter, J.S., born in May of 2002, one of the two subject children herein, became emancipated.  The parties also have an older daughter, J.S., born in January of 2000 and emancipated in January of 2018, who is not a subject child in this appeal.

counseling, and Mother to pay for the co-parenting counseling for both parties. We affirm.

We also agree with the trial court that Father's request for this court to impose his counsel fees and costs on Mother should be granted, as Mother's behavior has been obdurate, and her appeal is frivolous. Thus, we affirm the order, grant Father's request for Mother to pay Father's counsel fees and costs, and remand to the trial court to determine and impose the amount of those fees and costs.

In its Pa.R.A.P. 1925(a) opinion, the trial court ably set forth the factual background and procedural history of this appeal. (Trial court opinion, 5/16/19 at 1-2.) Relevant to the instant appeal, on March 28, 2016, Mother and Father participated in their first Court Conciliation and Evaluation Service (hereinafter "CCES") evaluation, involving the Children and their since-emancipated daughter, J.S. Eventually, the parties entered into a stipulated custody agreement, which the court entered as an order in April of 2017. In August of 2017, Father filed a petition for special relief to hold Mother in contempt of the then-existing stipulated custody order, and for modification of the custody order and his counsel fees.

In the custody order dated and entered on February 6, 2018, the trial court deferred the contempt matter filed in August of 2017, and directed the parties to participate in a second, updated CCES evaluation. The order provided that, notwithstanding that the eldest child was emancipated, the

contempt matter, as it related to her, was deferred for consideration in the CCES evaluation and would be considered at a hearing in June or July of 2018.

On February 8, 2018, the trial court also entered a second order dated February 6, 2018, that directed the parties to participate in the CCES program or risk sanctions set forth in Pa.R.C.P. 1915.8(g). This order included a provision captioned **"<u>CONSENT AND WAIVER</u>"** which both parties signed and dated on February 6, 2018, that stated that the CCES evaluation report could be admitted into evidence in the custody litigation between the parties. The Consent and Waiver also provided that the parties waived the presentation of evidence by testimony of the person who prepared the CCES report in court and the right to call that person as a witness; the right to subpoena the notes and the person who prepared the report to a deposition; and the right to subpoena from the CCES evaluator any medical, psychological, or education records used in preparing the CCES evaluation. Further, the Consent and Waiver provided that the parties waived the right to challenge the qualifications, observations, reasoning, and conclusions of the expert witness who prepared the CCES evaluation and report, and agreed not to subpoena or otherwise call that person as a witness. By signing the Consent and Waiver, the parties expressly did not waive their right to a full hearing before the court or the right to call any other expert witness of their own. Finally, the Consent and Waiver provided that the parties had voluntarily,

knowingly, and intelligently agreed to participate in the procedure. (Trial court order, 2/8/18 at 1-2 (unpaginated).)[2]

Subsequently, the CCES report was filed on May 9, 2018. At the custody hearing on June 25, 2018, the trial court, the Honorable Jeffrey G. Trauger, entered a custody order "based on the agreement" of Mother and Father with regard to the Children, wherein they share legal and physical custody of the Children.

The June 25, 2018 custody order had several provisions relevant to the present appeal, including legal custody, physical custody, vacation, right of first refusal, and other provisions.

On December 17, 2018, Father filed a "Petition for Contempt and Counsel Fees," alleging Mother had violated the June 25, 2018 custody order. Additionally, Father asserted Mother was attempting to estrange the Children from him, as she had done with the parties' eldest child, J.S., from whom he is completely estranged. Father requested the trial court to find Mother in willful contempt of its June 25, 2018 order, and direct that: a) Mother shall honor the Right of First Refusal provision in the June 25, 2018 Order at all times or suffer the loss of custodial time with the children; b) Mother shall be committed to the Bucks County Correctional Facility until she writes a letter to the court indicating how she intends to address her actions, which

---

[2] The record reflects that, on November 23, 2015, the parties signed and dated an identical Consent and Waiver with regard to the first CCES report.

undermine Father's relationship with the Children; c) Mother shall submit to co-parenting counseling with Father at Mother's sole cost to actively address Mother's mental health issues and to address how she will cease undermining Father's relationship with the Children; and d) such other relief as the trial court would deem appropriate and just. (Petition for contempt and counsel fees, 12/17/18 at 4 (unpaginated).)

On January 14, 2019, Mother's present counsel, Attorney Rich Raiders, entered his appearance.[3] On January 15, 2019, a custody conference occurred before a custody conference officer, Attorney Lisa Prezelski, and she filed her report.

The trial court held an evidentiary hearing on March 26, 2019, at which Mother was present with Attorney Raiders, and Father was present with his counsel, Attorney Susan J. Smith. At the commencement of the hearing, the trial court had an exchange with counsel concerning the court's intention to admit the two CCES reports, to which Mother's counsel objected on the basis that there was no one present to authenticate them. The trial court stated:

> THE COURT: Well, counsel, with all due respect, under the rules of this [c]ourt and the consent that was signed by your client, a CCES report can be introduced without the presence -- in fact, the presence of the evaluator is specifically prohibited under the CCES

---

[3] Attorney Sandra W. Morris represented Mother, until August 7, 2017, when she withdrew as counsel, and Attorney David T. Schnarrs entered his appearance. Attorney Schnarrs' withdrawal as counsel does not appear in the certified record.

> process, so your objection is overruled. That report is part of the record in this case. . . .

Notes of testimony, 3/26/19 at 3.

On April 24, 2019, the trial court entered an order dated April 22, 2019, providing:

> AND NOW, this 22[nd] day of April, 2019, in accordance with the ruling made at the hearing on March 26, 2019, it is hereby ORDERED and DECREED and DIRECTED that:
>
> 1. Mother is found in contempt of the [c]ourt's Order dated June 25, 2018.
>
> 2. On April 6, 2019, Mother is to take the two minor children to a location selected by Father to secure their passports. If said location is no longer available, Father has 10 days from that date, to designate a new location.
>
> 3. Father is to maintain possession of the minor children's passports.
>
> 4. The parties must agree on any out of country travel for the children. Consent for travel outside of the country shall not be unreasonably withheld. If a party unreasonably withholds consent, that is contempt of this Order.
>
> 5. Within 90 days of this Order, Mother must complete an in-person co-parenting course. Proof of the completion of Mother's co-parenting course must be provided to Father in a timely manner.
>
> 6. Once Mother completes said co-parenting course and provides proof of attendance

> thereof to Father, the parties shall attend co-parenting counseling for at least six (6) sessions. If the parties cannot agree upon a co–parenting counselor within twenty days of Mother completing the co-parenting course, the parties' counsel shall promptly submit three names to chambers for the [c]ourt to select the co-parenting counselor.
>
> 7. The cost of all co-parenting counseling, together and individually, along with the cost of the Mother's co-parenting course, shall be paid exclusively by Mother.

Trial court order, 4/22/19.[4]

On April 26, 2019, Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(ii) and (b). On May 10, 2019, Attorney Smith withdrew her appearance for Father. He is proceeding **pro se** in this appeal. In his brief, Father requested this court to award his counsel fees and costs against Mother based on her:

> pattern of obdurate behavior, which has been demonstrated over and over again. Her frivolous appeal serves merely as the capstone of Mother's non-compliance with custody orders.

---

[4] The trial court stated that it was not imposing a sanction on Mother for her contempt, which would render this order not appealable. **Rhoades v. Pryce**, 874 A.2d 148 (Pa.Super. 2005), **appeal denied**, 587 Pa. 724, 899 A.2d 1124 (2006). However, we find that by imposing all costs of the co-parenting counseling, together and individually to be paid exclusively by Mother, this is a significant sanction which renders the contempt order final and appealable.

On September 4, 2020, Father, acting **_pro se_**, filed a motion for post-submission communication, asserting that the order on appeal against Mother:

> exemplifies a pattern of obdurate behavior which has been demonstrated over and over again and the frivolous appeal serves merely as the capstone of Mother's non-compliance with custody orders. Consistent with the Conclusion within the Brief for Appellee, I am requesting that legal fees be reimbursed totaling $1669.50.

Father's "Application for Post-Submission Communication" at 1.

On September 10, 2020, Mother's counsel filed an "Answer to Application for Post-Submission Communication." Mother asserts that her appeal is not frivolous and that we should dismiss, with prejudice, Father's motion. She further suggests that Attorney Smith, after withdrawing, might have been involved in preparing Father's **_pro se_** brief on appeal and, possibly, in other matters in this litigation, and that we should refer her to our Supreme Court's Disciplinary Board.[5]

In her brief on appeal, Mother raises two issues:

> 1. Did the trial court deny appellant her procedural due process rights by admitting into evidence and incorporating into the trial record a report of a custody evaluation containing opinion as a business record contrary to the Pennsylvania Supreme Court opinion in **_In re: A.J.R.-H. and I.G.R.-H., Appeal of K.J.R., Mother_**, 188 A.3d 1157, 1167 (Pa. 2018) prohibiting the admission of opinion as a business record

---

[5] We decline Mother's request.

without offering the opportunity for the parties to examine any witnesses supporting hearsay opinion evidence?

2. Did the trial court deny appellant her procedural due process rights by admitting such hearsay opinion evidence concerning the minor children who were the subject of the custody matter without providing the opportunity for the children to appear before the court, especially in light of the admission of opinion as business records?

Mother's brief at 2.

In her brief, Mother summarizes her argument as follows:

The CCES reports were offered, and immediately accepted, as exhibits at trial. These exhibits were not properly authenticated, and both exhibits contained multiple levels of hearsay not satisfying any of the mandates of the business record exception. It is well established that each level of hearsay must fall into an exception. It is well established that records containing medical diagnosis and opinion are inadmissible unless the declarant testifies and is subjected to cross-examination. Recent Supreme Court precedent[, *In re: A.J.R.-H. and I.G.R.-H*, *supra*,] reinforces the right to confront witnesses offering opinion as a business record. Therefore, the records presented should have been rejected as hearsay. The admission of record was not a harmless error.

Instead, the Bucks County Court of Common Pleas requires anyone seeking a custody evaluation to execute an adhesion contract requiring all parties to unconstitutionally waive their right to confront the custody evaluator. The CCES order in Bucks County must be issued on the standard Bucks County Custody Evaluation Order which the parties are not permitted to amend.

> The trial court also erred in not allowing the children to be [sic] testify regarding the alleged alienation. The only evidence of alleged alienation consisted of the CCES report, without the opportunity to confront the author of the report and its opinion evidence. At no point did the trial court evaluate any evidence of actual alienation of the children. The trial court directly stated that the minor children had their say with CCES and were not entitled to speak to the judge. Without being able to testify that the alienation did in fact occur, there can be no determination that any alienation existed.

Mother's brief at 4-5.

With regard to civil contempt, this court has set forth our scope and standard of review as follows:

> In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt.[Footnote 7]
>
>> [Footnote 7] To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. . . .

***P.H.D. v. R.R.D.***, 56 A.3d 702, 706 (Pa.Super. 2012) (quotation and citations omitted).

Additionally, we have stated:

> When considering an appeal from an Order holding a party in contempt for failure to comply with a court Order, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion. The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. To be in contempt, a party must have violated a court Order, and the complaining party must satisfy that burden by a preponderance of the evidence.
>
> . . . .
>
> Further, with regard to contempt orders, this Court has stated:
>
>> Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellant [sic] court must place great reliance upon the discretion of the trial judge. On appeal from a court order holding a party in contempt of court, our scope of review is very narrow. We are limited to determining whether the trial court committed a clear abuse of discretion.

*Harcar v. Harcar*, 982 A.2d 1230, 1234-1235 (Pa.Super. 2009) (some quotations and some citations omitted). Moreover, "[t]his Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor." *Id.* at 1236 (quotation omitted).

- 11 -

Moreover, "[d]ue process requires that the litigants receive notice of the issues before the court and an opportunity to present their case in relation to those issues." *Brooks-Gall v. Gall*, 840 A.2d 993, 997 (Pa.Super. 2003) (recognizing that dependency proceedings implicate due process concerns). It is well settled that "procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *S.T. v. R.W.*, 192 A.3d 1155, 1161 (Pa.Super. 2018). "The right of a litigant to in-court presentation of evidence is essential to due process; in almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *M.O. v. F.W.*, 42 A.3d 1068, 1072 (Pa.Super. 2012). "A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." *Commonwealth v. Tejada*, 161 A.3d 313, 317 (Pa.Super. 2017).

The trial court discussed Mother's issues together, as follows.

> The first issue before the Superior Court is whether Mother's procedural due process rights were denied "by admitting into evidence and incorporating into the trial record a report of custody evaluation." [The trial court] initially note[s] that Mother does not dispute having signed the CCES consent and waiver form to participate in the CCES evaluation. That form states as follows: "I hereby consent to psychological services to be performed by Court Conciliation and Evaluation Services. I understand that the purpose of these services is to help us decide how our family can

- 12 -

best meet the needs of the children and adults, and to provide the court with the conclusions of an independent expert." (CCES Consent and Waiver, dated February 6, 2018, hereinafter "CCES Consent and Waiver.").

By signing such consent and waiver, Mother affirmed that "I stipulate to the admission of the report into evidence. I understand that normally evidence is offered by a witness testifying in court. I am waiving the necessity of the presentation of testimony by the person who prepares the report." *Id.* Further language included the averment that "I waive the right to subpoena the notes and the person who prepares the report to a deposition or testify in court. I understand that normally there is right to challenge the qualifications, observations, reasoning and conclusion of the expert witness by questioning that witness. I am waiving my right to question this witness on the record. I agree not to subpoena or otherwise call this witness." *Id.*

However, the Consent clearly states that "I do not waive my right to a full hearing before the court or my right to call any other expert witness of my own." *Id.* Mother enjoyed the benefit of a "full hearing" before [the trial court] on March 26th, [2019,] but appears to be looking for any grounds, no matter how **frivolous**, to appeal the order handed down following said hearing.

Mother's assertion that her procedural due process rights were denied by admitting into evidence and incorporating into the trial record the parties' CCES evaluation report, [sic] flies in the face of her own signature on the Consent and Waiver form, which explicitly states that she agreed to the admissibility of said report as part of the trial record. Further, it contained language of a clear waiver of any right to subpoena or cross-examine the CCES evaluator. We also note that Mother was represented by counsel at

- 13 -

the time she signed the subject CCES Evaluation Consent and Waiver. (CCES "Consent and Waiver").

Mother claims that admitting the CCES report was contrary to the Pennsylvania Supreme Court opinion in *In re A.J.R.-H.*, prohibiting the admission of opinion as a business record without offering the opportunity for the parties to examine any witnesses supporting hearsay opinion evidence. *In re A.J.R.-H.*, 188 A.3d 1157, 1167 (Pa. 2018). This case is clearly not applicable to the instant case. *In re A.J.R.*, [sic] involved a termination of parental rights in the Orphan's Court of Berks County. There, 167 exhibits were admitted en masse to the hearing, when Children and Youth Services (CYS) filed petitions to terminate the parental rights of mother and father. Those documents included CYS's summary of exhibits and of the case, which were not admissible under the business records exception.

The instant case does not involve the termination of parental rights, nor [sic] business records being admitted as an exception to the hearsay rule. As indicated above, the CCES report was admitted based on both Mother and Father signing the CCES Consent and Waiver.

The second issue before the Superior Court is whether Mother's procedural due process rights were infringed because, as she contends, her minor children should have been allowed to testify in open court to the custody matter at hand.

However, the weight of both statutory and case law is against Mother's arguments. It is clear that the [t]rial [c]ourt has discretion whether or not to have minor children testify at custody hearings.

Pa.R.C.P. 1915.11(b) expressly provides this discretion to the Trial Court and does not require that the court interview a child in a custody matter.

Likewise, Pa.R.C.P. 1915.11(c) does not mandate a child's attendance at a custody hearing.

More specifically, Pa.R.C.P. 1915.11, entitled "Appointment of Attorney for Child. Interview of Child. Attendance of Child at Hearing or Conference" provides, in relevant part:

(b)     The court may interview a child, whether or not the child is the subject of the action, in open court or in chambers. The interview shall be conducted in the presence of the attorneys and, if permitted by the court, the parties. The attorneys shall have the right to interview the child under the supervision of the court. The interview shall be part of the record.

(c)     Unless otherwise directed by the court, the child who is the subject of the action shall not be required to attend a hearing before the court or a conference.

Pa.R.Civ.P. 1915.11.

Case law upholds the plain language of Pa.R.Civ.P. 1915.11, which renders interviewing a child in a custody proceeding optional. In the case of **_T.D. v. E.D._**, [194 A.3d 1119 (2018),] the Pennsylvania Superior Court upheld the [t]rial [c]ourt's discretion as to whether or not to allow a minor child to testify in open court at a custody hearing or to be interviewed by the Judge in chambers. **_T.D. v. E.D._**, 2018 PA Super 235, 194 A.3d 1119 (2018) ([f]ather argued that the trial court erred in not interviewing Child with regard to flying as an unaccompanied minor, but the Superior Court disagreed and affirmed that the trial court did not abuse its discretion in such matters).

Moreover, in prioritizing a child's best interest, there are several instances that would warrant keeping a child away from the court when the child's participation is not necessary. The stress and emotion involved in coming to court to testify, even for an adult, particularly about situations involving children and their parents, could have an adverse effect on a child. Placing a child in a position of feeling like he or she has to choose or opine on even a discrete custody matter could aggravate relationships to the detriment of the child's best interest.

"[T]he presence of a child in court is not always necessary or desirable. The experience may be traumatic and disruptive. Consequently, the child should not be required to attend a hearing or conference in every case." *See* Domestic Relations Committee Explanatory Comment to Pa.R.Civ.P. 1915.11 (1991); *T.D.*, 2018 PA Super 235.

In this instance, Mother's counsel submitted no explicit offer of proof of what relevant testimony he expected to elicit from the children or how the testimony would be germane to the matters before the [c]ourt. There is no evidence that either party asked for their children to speak privately to the Judge on any compelling custody matter.

At [the trial court's] hearing on March 26, 2019, Appellant's counsel objected to the admission of the CCES report into the record. The [c]ourt unmistakably responded[,] "Well, counsel, with all due respect, under the rules of this [c]ourt and the consent that was signed by your client, a CCES report can be introduced without the presence - in fact, the presence of the evaluator is specifically prohibited under the CCES process, so your objection is overruled. The report is part of the record in this case." (Transcript, pp. 2-3).

- 16 -

> Therefore, the [c]ourt's ruling on the admissibility of the CCES report at the hearing put Mother's counsel on notice of his client's consent to its admissibility.
>
> He should have had ample opportunity to review the "Consent and Waiver," of his client as it was part of the trial record. Perhaps being new in the case may have caused Mother's counsel to overlook the record at [the] time of the hearing.
>
> However, Mother's continued pursuit of these assertions in the face of the record, as well as contradictory statutory and case law, where she does not dispute her signature on the Consent[,] is particularly bewildering to this [c]ourt. It appears Mother, who had previously agreed to the CCES evaluation[,] is suddenly unwilling to accept its findings when not favorable to her view. This [a]ppeal was filed despite the fact that it would perpetuate acrimony and the negative effect it would likely have on the best interests of the children. Moreover, it underscores the need for Mother to undergo co-parenting classes, as ordered, and not delay their completion any further.

Trial court opinion, 5/16/19 at 4-7 (emphasis added).

Upon careful review, we find that the record supports the trial court's finding of contempt against Mother. Concerning the admissibility of the CCES reports, we find no abuse of discretion on the part of the trial court, and we adopt its reasoning as this court's own. (**See** trial court opinion, 3/16/19 at 4-5.) Mother, who was counseled, signed the Consent and Waiver in the November 23, 2015 and February 6, 2018 orders for the parties to participate in CCES, and thereby consented to the use of the CCES reports in litigation proceedings. To the extent that her present counsel attempts to cast the

Consent and Waiver portion of the trial court's orders as a contract of adhesion, this issue is not properly raised before this court, as it was not raised in the trial court. **See** Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived, and cannot be raised for the first time on appeal).

Likewise, for reasons expressed in the trial court opinion regarding Mother's second issue, the trial court did not abuse its discretion in considering the Children's statements as set forth in the CCES reports. (**See** trial court opinion, 3/16/19 at 5-7.) Mother and her counsel had notice of the CCES reports and Father's potential use of the content of the reports at the hearing. She had an opportunity to be heard regarding the admission into evidence, and the court's consideration, of the statements that the Children made to the CCES evaluator that were part of those reports. As discussed in the trial court opinion, Mother's counsel failed to present the trial court with any necessary reason for the Children to testify in court. We agree with the reasoning in the trial court's opinion. (**See** trial court opinion, 5/16/19 at 5-7.)

We find there is competent evidence in the record to support the trial court's credibility and weight determinations, and the trial court's findings regarding contempt are not unreasonable. We, therefore, affirm the April 22, 2019 order.

Finally, we address Father's requests, made in his brief on appeal and motion for post-submission communication, for this court to award his counsel

fees to him and to order Mother to pay the costs of litigation. In so doing, we grant his request for post-submission communication.

In its Rule 1925(a) opinion, the trial court addressed Father's request for counsel fees as follows.

> The third issue before the Superior Court is whether Father is entitled to an award of reasonable attorney fees pursuant to Pa.R.A.P. 2744. A reasonable attorney's fee may be granted where an appeal is frivolous or results from vexatious conduct. Pa.R.A.P. 2744. An appeal is frivolous where it lacks any basis in law or fact. *Marino by Marino v. Marino*, 411 Pa.Super. 424, 601 A.2d 1240, 1250 (1992), citing *Smith v. Corn., Pennsylvania Bd. of Prob. & Parole*, 524 Pa. 500, 506, 574 A.2d 558, 562 (1990).
>
> Likewise, when identifying a frivolous appeal, our Superior Court has held that they must determine whether [the] appellant's arguments will likely succeed and whether continuation of the contest is reasonable. *Com. Dept of Transp. v. Springbrook Transp., Inc.*, 390 Pa.Super. 308, 568 A.2d 667 (1990). There, the [Superior Court] found that [the appellant] should not have filed an appeal as "[i]t ignored well-settled precedent and had no likelihood of success." *Id.* Consequently, an award of attorney's fees to appellee Springbrook was found to be justified. Therefore, we believe Father is entitled to attorney fees and costs based on Mother's pattern of obdurate behavior, which has been demonstrated over and over again. Her frivolous appeal serves merely as the capstone of Mother's non-compliance with custody orders.
>
> Overall, in making our decision, it has been clear to us for quite some time that there is significant conflict between the parties, and that there is almost no willingness on the part of Mother to cooperate or communicate with Father.

> Here, Mother blatantly violated the Custody Order of June 25, 2018. Not only did she openly criticize Father in front of their children, but also denied him the right of first refusal for care of their children when she was hospitalized. She claimed at the hearing that she was in pain and under the influence of pain medication and was therefore unable to make decisions. However, we found that she in fact was able to make several decisions including original and then modified provisions for the care of the children by neighbors and the decision to tell the children not to let Father know of her hospitalization.
>
> We found that there's a complete lack of co-parenting here and Mother does not respect Father, even in front of their children. A clearer case of contempt is hard to imagine, but to add injury to insult, Mother and her attorney chose to appeal that Order on frivolous grounds. Rather than complying with a Custody Order that is in the best interests of their children, Mother appears to require yet another reminder from our judicial system that she does indeed share custody with Father.

Trial court opinion, 5/16/19 at 8-9.

In her "Answer to Application for Post-Submission Communication," Mother asserts:

> 21. For the appellate court to determine frivolity, the [c]ourt must find that "appellant's claim lacks any basis in law or fact." ***Commw. v. Reichle***, 404 Pa.Super. 1, 589 A.2d 1140, 1143 (Pa. Super 1991).

Mother's "Answer to Application for Post-Submission Communication" at (unpaginated) 5 ¶ 21. In ***Reichle***, to determine whether the appeal was frivolous for purposes of determining whether to impose counsel fees and

costs pursuant to Pa.R.A.P. 2744 requested by the appellee, we scoured the record for whether the appeal had any basis in law or fact, relying on our case law as precedent. *Reichle*, 589 A.2d at 1143. In that matter, we determined that there was no basis in law or fact for the appellant's counsel to have filed the appeal and, accordingly, remanded the matter for the trial court to determine the amount of, and to impose, the counsel fees and costs. *Id.*[6]

In the present matter, we have scoured the record and conclude that there was no basis in law or fact for Mother, who voluntarily, intelligently, and knowingly entered the November 23, 2015 and February 25, 2018 custody agreements/orders of court, with Consent and Waiver provisions, to behave in a manner which did not comply with the custody order by interfering with Father's exercise of shared physical custody of the Children. Because of Mother's obdurate behavior, it became necessary for Father to continue the custody litigation, including opposing Mother's appeal of the contempt order against Mother. As suggested by the trial court, Mother continued her pattern of obdurate behavior by challenging the trial court's admission of the CCES

---

[6] *See generally*, *Commonwealth v. Goodwin*, 928 A.2d 287, 291 (Pa.Super. 2007) (*en banc*) (stating that, in assessing whether an appeal is frivolous, it is "this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Id.*, quoting *Commonwealth v. Wright*, 846 A.2d 730, 736 (Pa.Super. 2004). *See Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa.Super. 2015) (following *Goodwin*).

reports as inappropriate, and raising the claims that the court's admission of the CCES reports violated her guarantee to due process, and that the trial court abused its discretion in failing to have Children present to testify before the court. We agree with the trial court that Mother's appeal is frivolous.

Accordingly, we affirm the trial court order that found Mother in contempt and imposed sanctions on her. As we agree with the trial court that Mother's behavior has been obdurate in this litigation and that Mother's appeal is frivolous, for the reasons stated by the trial court, we agree that Mother should bear the costs of Father's counsel fees and court costs. We, therefore, remand the matter to the trial court for the determination of the amount of Father's counsel fees and costs, and to impose such on Mother. **Reichle**, **supra**, 589 A.2d 1143.

Order affirmed; Father's motion for post-submission communication granted; case remanded for further proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

JosephD.Seletyn,Esq.
Prothonotary

Date: 12/15/2020

- 22 -